[Civ. No. 6742. Third Dist. Mar. 20, 1942.]

HENRY J. CHRISTIAN et al., Appellants, v. RICE GROW-
ERS ASSOCIATION OF CALIFORNIA (a Corpora-
tion), Respondent.

618

Fontaine Johnson for Appellants.

George R. Freeman and Elmer Laine for Respondent.

TUTTLE, J.—This is an action brought by Christian Bros., a copartnership, as plaintiffs and appellants, against the Rice Growers Association of California, a domestic corporation, as defendant and respondent, under the common counts, for goods, wares and merchandise sold and delivered, to wit, sacks and twine delivered by the plaintiffs and appellants to Herman Kalfsbeek and Ray C. Tolson, at the request of the defendant and respondent Rice Growers Association of California. Findings were made in favor of defendant upon all issues, and it was adjudged that plaintiff take nothing by said action. The appeal is from the judgment.

The chief contention made by appellants is that the evidence is insufficient to support a finding to the effect that one L. L. Hyde had no authority to bind respondent in the matter of the payment for bags, sacks and twine furnished by appellants.

The evidence shows that Hyde was a licensed agent for respondent under section 1261 of the Agricultural Code, which reads as follows:

"The term 'agent' means any person who, on behalf of any

commission merchant, or dealer, or broker receives contracts for or solicits *any farm products* from a producer thereof or who negotiates the consignment or purchase of *any farm product* on behalf of any commission merchant, dealer or broker.'' (Italics ours.)

The undisputed facts show that the appellants for some time had supplied bags, sacks and twine to Kalfsbeek and Tolson who were engaged in growing rice, and had become apprehensive about being paid for the merchandise. About October 27, 1937, meeting L. L. Hyde, a representative of the respondent, George Christian, one of the appellants, advised Hyde of the situation. Hyde requested Christian to deliver the sacks to Kalfsbeek and Tolson. At the same time Hyde presented Christian with what Hyde referred to as an ''order.'' Christian never read this document, but following Hyde's advice he took it to Tolson who signed it. Thereupon appellants delivered the merchandise. On February 7, 1938, several months later, appellant wrote to the respondent requesting payment and was informed on February 24, 1938, for the first time, both orally and by letter, that the respondent did not consider itself responsible for the obligation. In the latter part of January or the early part of February, 1938, appellants received a draft from the respondent in the sum of $30, with a notation ''in full payment of amount to be applied on account of Kalfsbeek and Tolson, 1937 crop.'' This draft was never cashed. The respondent had advanced money from time to time to Kalfsbeek and Tolson for the purchase of seed, and was handling their crop. Respondent paid warehouse, hauling and drying charges. The rice crop was delivered to respondent. The merchandise was delivered by appellants to Kalfsbeek and Tolson and was used by them in handling the rice crop delivered to respondent. This delivery was made after the conversation between Hyde and appellant Christian, and after Christian had refused to deliver any sacks to the account of Kalfsbeek and Tolson. The merchandise was of the value of $1,180.40. The appellants called no witnesses on the issue of Hyde's authority, other than Hyde himself, and his testimony in reference to his duties and authority is sufficient to sustain the findings. Hyde testified:

''Mr. Freeman. Q. Were you authorized by anybody in the Rice Growers Association to buy any sacks? A. No.

Q. And as a field man, Mr. Hyde, what were your duties? A. My duties were to contact members of the Association and independent growers, to assist members of the Association in obtaining seed and carrying information between the Association office and the members themselves. Q. Were you ever at any time authorized by the Rice Growers Association of California to furnish any sacks to Tolson and Kalfsbeek? A. No. Q. Did you ever purchase any sacks from Mr. Christian, the plaintiff in this case? A. No. Q. Did you ever agree to pay for any sacks? A. No. Q. Did you ever at any time tell Mr. Christian that the Rice Growers Association would pay for those sacks, regardless of the outcome of the crop? A. No. Q. Were you ever authorized by anybody in the Rice Growers Association to make any such statement as that? A. No. Q. Did you handle any of the finances at all of the Rice Growers Association? A. No, never did. Q. Did you do any buying for the Rice Growers Association? A. No. Q. Were you ever authorized by the Rice Growers Association to guarantee the payment to anybody for supplies furnished to any grower? A. No. Q. And did you as a fact in this case ever guarantee the payment of this bill for sacks? A. No."

 George R. Freeman, general counsel and assistant to the president of the association, testified as a witness for the respondent as follows:

"Mr. Laine. Q. What are the duties Mr. Freeman of the field representative? A. The field representative goes out in the field——

"Mr. Miller. I am going to object to this testimony, your Honor, unless it is made specific. The Court. Objection overruled. A. The field man is supposed to go out and keep in contact with the members of the Association and to do anything else required by the officers, to get the number of sacks of rice warehoused, and see how the harvest is carried on, to be of assistance to our own growers; in the event we purchase rice, to see that the rice goes into the trucks, or if by rail, into the cars, and to report to the Association. That is generally their duties. They haven't any other duties than those things, to do what they are told to. Q. Mr. Laine. Do they have any authority to buy on behalf of the Association any supplies, sacks or supplies of any kind . . . ? A. They have not."

 ▪ The provisions of the Agricultural Code have no appli-

cation in this case. The code does not prescribe the authority of an "agent" within the meaning of the act, and furthermore, the transaction involved does not involve a contract for, or solicitation of, "any farm products from a producer thereof" or the negotiation of the consignment or purchase of "any farm product on behalf of any commission merchant, dealer or broker." Sacks and twine are obviously not "farm products." We think that there was sufficient evidence to sustain the finding under the theory that Hyde was not the general agent of respondent, and clothed with the actual authority to bind it. Neither do we hold that the record, as a matter of law, shows that the agent had ostensible authority to bind respondents. It is provided in section 2317 of the Civil Code that "ostensible agency is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess." Whether or not Hyde was the agent of respondent was a question of fact for the trial court. (*Willey* v. *Clements,* 146 Cal. 91 [79 Pac. 850].)

The law is well settled that ostensible authority must be established through the acts or declarations of the *principal* and *not* through the acts or declarations of the *agent.* In *Hansen* v. *Farmers Auto. Inter-Ins. Exch.,* 139 Cal. App. 388 [34 Pac. (2d) 188], at page 393, the court states:

". . . It is well settled that apparent or ostensible authority of an agent can arise by implication only from the words, act or conduct of the principal and not from anything said or done by the agent."

In *Wiley B. Allen Co.* v. *Wood,* 32 Cal. App. 76 [162 Pac. 121], at page 84, the court states:

"The application of the rule of ostensible agency or authority depends primarily upon the acts or conduct or words of the principal, and not upon the acts or conduct or words of the agent. The rule is that a principal will be bound by those acts of his agent which he has given other persons reason to suppose are done by his authority, but, as suggested, such authority arises by implication and can only spring from the words, acts, or conduct of the principal."

The record in the present case shows that Hyde at no time did any buying of supplies for the account of the association, in fact, Hyde did not handle any of the finances of the association. There is no evidence that the association or

any of its officers had any notice or knowledge of any claim that Hyde had attempted to bind the association to pay for the sacks and twine furnished by the appellants to Kalfsbeek and Tolson, and there is no evidence of any acts or declarations of the association or any of its officers which in any way could have led the appellants to believe that Hyde had any authority to bind the association by the purported purchase of sacks and twine for the use of a rice grower.

In reference to the issue of ostensible authority, the trial court properly held that:

". . . there is no evidence that Rice Growers Association knew Mr. Hyde acted in excess of authority, and the first proof of notice of Christian Bros.' claim against the Rice Growers Association, to the Rice Growers Association, was the letter written by Mr. Christian on February 7, 1938, three months after delivery of the bags and twine."

The judgment is affirmed.

Thompson, Acting P. J., and Steel, J. pro tem., concurred.