[Civ. No. 16690.   First Dist., Div. Two.   Mar. 8, 1956.]

DOMENICO CIGNETTI, Appellant, v. AMERICAN TRUST COMPANY (a Corporation) et al., Defendants; SAN JOSE ABSTRACT AND TITLE INSURANCE COMPANY (a Corporation), Respondent.

Bressani & Hansen for Appellant.

Royal E. Handlos for Respondent.

DEVINE, J. pro tem.*—We are faced with the necessity again of deciding which of two innocent parties must bear the loss caused by the perfidy of Gladys McCormick, as we had to do in the case of *Hagen* v. *Silva, ante,* p. 199 [293 P.2d 143]. In that case, we were engaged with the subject of authority to collect principal as related to admitted authority to collect interest. In this case, authority of the agent to collect both principal and interest is not in dispute, but the question is whether or not the agent had authority to endorse commercial paper made payable to the principal.

Plaintiff, a man of little education, having nevertheless accumulated the sum of $8,500, arranged with Gladys McCormick, a real estate and loan broker who did business in San Jose as Wesley L. Pieper Company, to lend this sum to parties named Dalke. A note payable at the rate of $85 or more a month and a deed of trust with McCormick as trustee were executed by the Dalkes. Payments were made regularly by the Dalkes at the McCormick office, as the note provided they should be, but in what form the payments were made does not appear. Cignetti collected at that office over a period of about four years, in the form of checks drawn by McCormick.

In 1950, Cignetti was about to visit Italy, and he instructed McCormick to send his monthly checks to his cousin until he should return. Within a month of Cignetti's departure, McCormick arranged refinancing of the Dalke loan, the Bank of America taking over the loan and sending the funds to cover, to defendant San Jose Abstract and Title Insurance Company. McCormick sent a reconveyance of the Cignetti deed of trust, executed by her as trustee, to the title company, and made demand for collection of $7,759.49 for Cignetti. The title company sent a check for that amount, drawn on American Trust Company and payable to Domenico Cignetti, to McCormick. McCormick endorsed the check, first, by writing "Domenico Cignetti," and, below that stamping, "Pay to the order of Bank of America of California Gladys E. McCormick Trustee."

She continued to remit monthly "payments" to Cignetti for about two years after the reconveyance. When Cignetti learned of the transaction, McCormick had become bankrupt.

This is an action on the check against the title company, the drawer. The American Trust Company, which was the drawee, and the Bank of America, an endorser, had been made defendants, but they demurred successfully on the statute of limitations, and the action proceeded against the drawer only.

The drawer of a check is liable to the holder if the drawee refuses to pay, and the holder may sue on the check itself or on the original consideration. (*Roff* v. *Crenshaw*, 69 Cal.App.2d 536 [159 P.2d 661]; *Gambord Meat Co.* v. *Corbari*, 109 Cal.App.2d 161 [240 P.2d 342].) In this case, plaintiff has proceeded on the check, the drawee bank having refused to pay him.

It is the contention of defendants that plaintiff has received payment in that McCormick was his agent to collect and to endorse the check. If the endorsement be forged or made without authority, and if there be no estoppel, it is wholly inoperative. (Civ. Code, § 3104.) The trial court found that McCormick was the agent of plaintiff not only for the purpose of effecting collection of the note, but also, a check payable to plaintiff having been transmitted to the agent, for the purpose of endorsing the check. This finding is attacked by plaintiff as unsupported by the evidence.

The authority of an agent to sign a negotiable instrument may be established as in other cases of agency, and no particular form of appointment is necessary. (Civ. Code, § 3100.) ■ The burden of proving the agent's authority to endorse is on the defendant herein. (*Walsh* v. *American Trust Co.*, 7 Cal.App.2d 654 [47 P.2d 323].)

The trial court found to be true all the allegations of one paragraph of the answer which contained averments of agency in a general way, and also of estoppel, so that, in order to determine whether or not there is substantial evidence, including all legitimate inferences which might be drawn by the trial court, to support the finding, we shall consider the possible kinds of authority of agents, and the subject of estoppel.

Actual authority is such as the principal intentionally confers on the agent or intentionally, or by want of ordinary care, allows the agent to believe himself to possess. (Civ. Code, § 2316.) ■ The testimony of plaintiff that he did not tell the agent that she had power to endorse is uncontradicted. There is no showing of lack of ordinary care such as would lead the agent to believe she might endorse the check, nor any showing that actually she did believe she had such authority, which would be necessary to establish actual but implied authority. (*Columbia Outfitting Co.* v. *Freeman*, 36 Cal.2d 216 [223 P.2d 21].)

Section 2319 of the Civil Code provides "An Agent has authority:

"1. To do everything necessary or proper and usual, in the ordinary course of business, for effecting the purpose of his agency; . . ."

The act of refinancing without consulting the principal was, in itself, an officious one; but, assuming it to have come within the agent's power, there was no showing of necessity of endorsing the check in order to effect the purposes of the

agency. The agent could have held the check for endorsement by the principal.

We turn to the question whether or not endorsement was "proper and usual, in the ordinary course of business" for the purposes of the agency, and at this point, the nature of authority of an agent to endorse a negotiable instrument is to be considered.

■ The authorities are in accord that the power to endorse commercial paper is not one lightly to be inferred. (2 C.J.S. § 112; 2 Am.Jur. 141; 1 Mechem on Agency, 2d ed., § 969; cases collected in 37 A.L.R.2d 456 et seq.; Rest., Law of Agency, § 72d.) ■ It does not follow merely from authority to collect a debt. (Daniels on Negotiable Instruments, vol. 1, 7th ed. § 324.) The Supreme Court of this state has recognized the rule in *Arcade Realty Co. v. Bank of Commerce,* 180 Cal. 318 [181 P. 66, 12 A.L.R. 102], although, as appears below, the court held that under the circumstances of that case, the agent did have authority to endorse.

In *Helgeson v. Farmers' Ins. Exch.,* 116 Cal.App.2d Supp. 925 [255 P.2d 484], it was held that where an attorney endorsed his client's name on a draft given in settlement of a personal injury case, and absconded with the proceeds, the drawer who had paid the forged draft must pay again to the rightful holder. The test was whether or not the agent needed the power of endorsing in order to fulfill the purposes of the agency.

■ There has been no showing in the present case that, in the light of the authorities cited, the power to endorse was proper and usual in the ordinary course of business, but to the contrary, it appears that an extraordinary power was assumed by the agent.

Absent also is proof of ostensible authority, which may be considered together with the subject of estoppel. ■ One who seeks to charge a principal upon a charge of ostensible authority must himself believe that the agent had authority to do the act in question. (*Harris v. San Diego Flume Co.,* 87 Cal. 526 [25 P. 758]; *Walsh v. American Trust Co., supra.*) ■ There is no testimony in the record that anyone in the title company believed McCormick had any right to endorse the check. In fact when it was returned to the drawer it had already been honored by the drawee, and, no doubt, the drawer relied on the drawee's action, and the drawee, in turn, on the prior endorsement by the Bank of America. ■ A second necessary element of ostensible authority is that

an act or negligent omission of the principal must have led the third party to a mistaken belief. (*County First Nat. Bank v. Coast Dairy Land Co.*, 46 Cal.App.2d 355, 366 [115 P.2d 988].) ██ This, too, is missing. There is not a single prior act of the principal in permitting an endorsement which might give color to authority when known to the third party, or which would estop him from denying that the agent actually possessed the high power of endorsing. ██ The fact that McCormick was an agent and was entrusted to do a specific thing did not constitute want of ordinary care on the part of the principal in not anticipating her doing other acts far beyond the scope of the granted power. ██ On the other hand, one dealing with an agent must inquire as to the extent of his authority. (*Ernst v. Searle*, 218 Cal. 233, 240 [22 P.2d 715].)

The cases cited by respondent are quite distinguishable from the one at hand. In the Arcade case, *supra,* the court sustained the finding and conclusion of the trial court that the agent was empowered to endorse, this authority resulting from the facts, 1. that the agent was a general agent for the leasing, care and repair of the building and possessing, as the court said, "far more power than a mere collector" and, 2. that the principal must have been aware that when the agent remitted his own personal check every month, he, the agent, was depositing rents as they came in, in his personal account.

The case of *Safeway Stores v. King Lbr. Co.*, 45 Cal.App.2d 17 [113 P.2d 483] has to do with the authority of the manager of a lumberyard in a town which had no bank, to cash checks made payable to the company. The manager had authority to collect, to sell, to pay wages and generally to carry on the business; the practice of cashing the checks had gone on for many months. The company's bookkeeping did not require the manager to differentiate between cash receipts and check receipts. The court, affirming the trial court held that there was abundant proof of want of ordinary care on the part of the company which had misled those extending the favor of cashing the checks. The authority of the manager of a continuing business enterprise is to be distinguished from that of an agent whose authority is to make collection of a single loan, and who is therefore, a special agent. (Civ. Code, § 2297.)

The case of *Gaine v. Austin*, 58 Cal.App.2d 250 [136 P.2d

584] has nothing to do with authority of an agent to endorse paper made payable to his principal. The checks in that case were payable to the agent who, it was held, had authority to collect, where the principal, the mortgagee, had suggested that the mortgagor should sell the property, and had given the agent an executed satisfaction of mortgage.

As was pointed out in a comment on the Helgeson case, *supra,* in 27 Southern California Law Review 463, the rule which forces a second payment by a drawer may seem harsh at first sight, but usually the drawer can recoup from intermediate parties between the holder and himself who have guaranteed payment. In this case, it is entirely possible that recoupment will be had from the drawee and by the drawee from the endorser it relied upon. This is said, not by way of basing the decision on such possibilities, but because it is deemed not inappropriate in view of respondent's claim, asserted in the answer, that the equities lie with respondent. The negligence which, added to the nefarious conduct of McCormick, brought about the loss, is of those who chose to rely on her warranty, by endorsement, that she had good title to the check. (Civ. Code, § 3146.) The drawer's liability, in turn, follows from the general rule of drawer's responsibility, as given above. It was the drawer's choice to select a drawee bank and to place confidence in that drawee's decision to make payment to the proper holder.

The judgment is reversed.

Dooling, Acting P. J., and Kaufman, J., concurred.