[Civ. No. 21997. First Dist., Div. Three. July 29, 1965.]

W. L. CURTIS, Plaintiff and Respondent, v. HANNAFORD
& TALBOT, Defendant and Appellant.

Maurice E. Gibson for Defendant and Appellant.

Rawles, Nelson & Golden and Joan G. Poulos for Plaintiff
and Respondent.

DEVINE, J. — Respondent, Curtis, obtained judgment against Hannaford & Talbot, a corporation, stock brokers, on an asserted warranty that shares of a certain stock would produce 100 per cent profit over a period of 12 months; and the brokerage firm appeals.

Respondent had bought and sold securities through appellant and had dealt with appellant's salesman, Turner, at its Ukiah office. In the transaction which led to this action, it was claimed by respondent that he ordered the purchase of 200 shares of American Marietta and 100 shares of A B C Vending Company, and that he asked Turner to check on "what is happening to Colgate Palmolive," a stock owned by respondent. Turner understood the conversation, which was by telephone, to direct him to sell the Colgate stock and to buy the other two only after the Colgate sale and from its proceeds. In his testimony at the trial, Turner said that he may have been mistaken, but was not sure. Immediately following the transaction, however, Turner was willing to concede that he had been mistaken. He had sold the Colgate stock, which went up in price immediately, and he deferred the purchase of the others, the prices of which also advanced.

Respondent protested to Turner, but to no one else until many months later. Turner sought to make amends in order, as he testified, to keep respondent as a customer, and also to protect himself in his own position. Without mentioning the matter to anyone in the firm, Turner agreed to pay respondent $700, and made payment of $350 by certified check or a money order which he obtained from his personal funds. In addition, Turner made a proposition about the purchase of Lestoil Products preferred stock, which respondent accepted and which is described in the last sentence of a memorandum which was handed to respondent at his home by Turner. The memorandum reads as follows: "To WHOM IT MAY CONCERN: Due to an assumption on the part of the *undersigned*, I failed to ask Mr. William L. Curtis, Star Route, Upper Lake, California if the purchase of two hundred (200) shares of American Marietta and one (100) hundred shares of A B C Vending were contingent on the limit sale of three hundred (300) shares of Colgate-Palmolive, and the two purchases were delayed three days pending the sale at the limit. Mr. Curtis, as a result, incurred a loss. After discussing the discrepancy with Mr. Curtis it was mutually agreed that the *undersigned* would pay the sum of seven hundred dollars

($700.00) as compensation for the loss incurred. Three hundred-fifty dollars ($350.00) has been paid to date with a like amount remaining. At the suggestion of the *undersigned* it was also agreed that Mr. Curtis would purchase one hundred (100) shares of Lestoil Products, Pfd. with assurance of one hundred (100) percent profit over a period of twelve (12) months from date of purchase. Signed James M. Turner.'' (Italics added.) The memorandum is not on a letterhead of Hannaford & Talbot. Respondent testified that Turner told him that ''In order to offset the losses that I had taken, was taking on the Colgate Palmolive in some degree, he had checked with the company's research department, and they had advised him that this stock, Lestoil stock, was bound to advance at least 100%. And that if I would purchase 100 shares of Lestoil stock, that they would guarantee that I would realize 100% profit, which would help to offset the loss I was taking on the sale of the stock prematurely.''

Although there is a minor dispute as to the closing date of the 12-month period in respect of damages, it may be taken on this appeal that the price of Lestoil stock did not advance 100 per cent but actually declined substantially. There is also dispute on the meaning of the word ''assurance'' as contained in the memorandum, which the court found to be a word of warranty, but this, too, we need not decide. The real question in the case is that of authority. Respondent does not contend that Turner had actual authority to make a warranty and, indeed, the evidence is overwhelming against actual authority on his part. Respondent relies on ostensible authority. ▮ We hold that the finding of ostensible authority is not supported by substantial evidence. Our reasons are:

1. No mention is made of the alleged principal, Hannaford & Talbot, in the memorandum. It refers specifically to ''the undersigned'' throughout and the signature is that of James M. Turner only. The memorandum is not on letterhead or form of the firm.

2. The payment of $350 was not by a check of the firm.

3. No similar transactions with respondent by anyone connected with the firm were shown. (Acts similar to this would be hard to find.) Respondent says that although the transaction was unusual, the events leading up to it also were unusual. This may be so, although it would seem that mistakes must occur in securities transactions, as in everything else,

but the situation does not give rise to apparent authority merely because the original occurrence may have been uncommon.

4. There is no evidence of negligence on the part of the firm leading respondent to a mistaken belief, and this is a necessary element of ostensible authority. (*Cignetti* v. *American Trust Co.*, 139 Cal.App.2d 744, 748-749 [294 P.2d 490] ; *Barclay Kitchen, Inc.* v. *California Bank*, 208 Cal.App.2d 347, 352 [25 Cal.Rptr. 383] ; Civ. Code, § 2317.)

5. Respondent made no inquiry about Turner's authority to make the extraordinary agreement. Under the circumstances, this is an important factor to be considered. (*Hill* v. *Citizens Nat. Trust & Sav. Bank*, 9 Cal.2d 172, 176-177 [69 P.2d 853] ; 1 Mecham on Agency (2d ed.) § 743, p. 527.) Nor did respondent mention the agreement to any officer of the firm until more than a year after it was made. When he did, the transaction was repudiated.

6. The oral statement by Turner relating to the research department does not support respondent's position. ■ An agent's authority cannot be established by his extrajudicial statements; the statements or acts which caused the third party to believe in the authority of the agent must be those of the principal. (*Christian* v. *Rice Growers Assn.*, 50 Cal. App.2d 617, 621 [123 P.2d 534].)

7. Respondent had some experience with securities, having bought and sold about 15 times. He had received buy or sell orders on regular forms.

■ 8. The transaction is so extraordinary as to be outside all of the ordinary course of business. Such a transaction could be ruinous to the salesman's employer, a factor to be considered, although, of course, this in itself would not be conclusive. Such an agreement, if enforced against the firm, would place the firm's resources behind the purchaser's venture. It would, at the firm's risk, make less meaningful J. P. Morgan's admonition that there is nothing certain about prices of stocks except that they fluctuate. It is beyond the bounds of apparent authority.

The case is to be distinguished from those in which an agent commits fraud within an authorized transaction, such as *Ghiglione* v. *American Trust Co.*, 49 Cal.App.2d 633 [122 P.2d 301], cited by respondent. Respondent cites *Tidewater Southern Ry. Co.* v. *Harney*, 32 Cal.App. 253 [162 P. 664], in which an agent of a corporation was held to have had osten-

sible authority to accept a subscription to the company's stock, conditioned on agreement to repurchase in ten months if the subscriber desired. There was no guarantee of the later price of any other corporation's stock, as in the case before us. Besides, the president of the corporation had given his approval to the agent's act.

Judgment reversed, with instruction to enter judgment for defendant.

Draper, P. J., and Salsman, J., concurred.

A petition for a rehearing was denied August 27, 1965, and respondent's petition for a hearing by the Supreme Court was denied September 15, 1965. Mosk, J., was of the opinion that the petition should be granted.