[Civ. No. 23288.   First Dist., Div. Four.   Apr. 24, 1968.]

THOMAS L. DOYLE et al., Plaintiffs and Respondents, v. SURETY TITLE & GUARANTY COMPANY, Defendant and Appellant.

*Assigned by the Chairman of the Judicial Council.

Timothy A. O'Connor and David R. Sylva for Defendant and Appellant.

Ruffo & Oneto and Jerome A. Smith for Plaintiffs and Respondents.

DEVINE, P. J.—This is an appeal from a judgment in the amount of $17,085.49 which was rendered against defendant Surety Title & Guaranty Company for negligent reconveyance of property which had been subject to a deed of trust.

Thomas L. Doyle and his wife owned a ranch which they conveyed to Jacke Construction Co., which later conveyed to Frederick Clark, a subdivider. Jacke Construction Co. exe-

cuted a deed of trust for the benefit of the Doyles, which Clark assumed. Defendant was not the original trustee, but became trustee and assumed the obligations of trustee. In the deed of trust, a price of $4,340 was set for each lot of the parcel to be sold, except Lot 37 on which the Doyles had their home. The release price for Lot 37 was $25,000. The release prices, as the lots would be sold, were to be sent to the Bank of America, which had advanced something in excess of $80,000 for offsite improvements, until the bank would be paid in full. After that, payments were to be made to the Doyles. The deed of trust was recorded.

The subdivision map was changed from its original form to create an additional lot, and the numbers were changed. Lot 37 became Lot 38. The recorded map showed the alteration; the deed of trust was not corrected. Clark, with one Dato, proceeded to build homes on the subdivision. Some of the lots were sold and the release price on each was paid (it had been increased to $4,500) to the bank. As each sale was made, a copy of the letter transmitting payment to the bank was sent to the Doyles. When Lot 37 (new series) was sold, the payment was made and confirming letter was sent to the Doyles. Mr. Doyle testified that the description was such that there was no question that this was not his house.

At one point, Clark obtained a buyer for plaintiffs' home and lot, thinking that plaintiffs wanted to sell. Doyle told him they did not want to sell. Since the loan commitment on plaintiffs' house had already been made, Clark, finding himself short of cash, asked the title company if he could put a loan on Lot 38. He was told he could. He consummated the loan in his name and that of his wife. It was his intention to repay the loan from the proceeds to be received on the remaining unsold lots. Clark did not inform Surety that he was dealing with the Doyle homestead when he arranged with them for a reconveyance. He referred to the property only as Lot 38. The title company, through its officer, knew that Clark was not selling Lot 38, but was encumbering it, the funds to be paid to him. The encumbrance was $17,000, a figure almost four times as much as the release price for the sale of the other lots. The title company's letter of transmittal went to Clark, not to the Doyles, as it had in the case of sales.

Clark received the net proceeds from the loan, amounting to $16,315, by defendant's check. Later, he was adjudged a bankrupt. He deeded Lot 38 back to the Doyles. At the time of the trial, he testified he had no means with which to pay

what he regards as his moral obligation to plaintiffs because of the encumbrance on Lot 38. The Doyles have been paying off the encumbrance.

### Breach of Duty by Trustee

The trial judge's finding that the trustee breached its duty to the Doyles as beneficiaries is amply supported by the evidence. The breach is shown by:

1. The failure of the trustee to ascertain that the Doyle residence was located on Lot 38, as shown on the final recorded tract map. The title company's own witness, its former controller and treasurer, admitted that it was normal procedure for the trustee to refer to the recorded tract map when executing a reconveyance and that this was not done in this case.

2. Partial reconveyances were to have been made, according to the deed of trust, only upon sales of lots. There was, of course, no provision in the deed of trust for reconveyances to be made for the purpose of encumbering the property in order to secure loans for the trustors. Surety's officer knew that this was a loan transaction.

3. The deed of trust allowed reconveyances only upon written request of the beneficiaries and presentation of the deed of trust and the note evidencing the obligation. No such written request was made for the reconveyance of Lot 38. Instead, the trustee accepted the directions of the trustor, Clark. It was not defendant's normal practice to do this.

When a trustee executes a partial reconveyance without proper authorization, the trustee is liable to the beneficiary for the full amount of the beneficiary's loss. (*Jeanese, Inc.* v. *Surety Title & Guar. Co.,* 176 Cal.App.2d 449, 453-454 [1 Cal.Rptr. 752].)

Appellant says something about contributory negligence or assumption of risk on the part of the Doyles, but these defenses were not pleaded and they were not issues in the trial. They will not be considered on appeal.

### Agency

Appellant's main point is that Doyle had made Clark agent for the Doyles in the matter of directing the trustee to execute partial reconveyances. The subject of agency was not raised in respondents' answer. The findings of fact and conclusions of law, however, impliedly negate the existence of agency. Moreover, the judge, at the end of the trial, said that he saw nothing "to imply that Clark became Doyle's agent." It is clear that Clark was not given an

actual agency by the beneficiaries to execute the reconveyance in question. Doyle and Clark both testified that Doyle was not informed of the transaction. As to asserted ostensible authority, we observe that there is nothing in the evidence which would compel the trial court to find the existence of such agency. There is no testimony in the record that anyone in the title company believed that Clark had the right to direct the unusual reconveyance, not in pursuance of sale, but of encumbrance of an extraordinarily high amount. Even if someone had testified to that effect, no doubt the court could have found against the testimony, concluding that one or more officers of the company acted through negligence rather than upon mistaken belief. But the testimony is lacking.

It is an essential ingredient of ostensible authority that a third party has been led to act upon the belief that a second party has been authorized as an agent by the first party. (*Cignetti* v. *American Trust Co.*, 139 Cal.App.2d 744 [294 P.2d 490]; *Walsh* v. *American Trust Co.*, 7 Cal.App.2d 654, 660 [47 P.2d 323].)

Even if there exists a belief in the agency of the second party, this, in order to establish ostensible agency, must have been caused by an act or negligent omission of the first party, the asserted principal. (*Curtis* v. *Hannaford & Talbot*, 236 Cal.App.2d 182, 185 [45 Cal.Rptr. 785]; *Cignetti* v. *American Trust Co.*, supra, pp. 748-749; *Walsh* v. *American Trust Co.*, supra, p. 660.) Of course, the third person must have had knowledge of such act or omission as the first element in the causation of his mistaken belief. (*Allen* v. *San Francisco etc. Produce Exchange*, 59 Cal.App. 93, 97 [210 P. 41].)

Appellant offers several facts as indicia of authority given by Doyle to Clark. They are: that Doyle, who was in the appliance business, sold appliances for the homes to Clark; that Doyle guaranteed a note of Clark's in order to bring the land up to FHA standards; that the Doyles signed certain reconveyance requests in blank, for convenience (but these were for *sales* and payments were made to the Doyles or to the bank). Appellant has not pointed out to us in its briefs, nor has our independent searching of the record shown, any evidence that these matters were relied upon (and it is doubtful that they could be) by the title company as showing agency for Clark to effectuate a loan payable to himself.

Appellant also places some reliance on a letter from the Bank of America to the title company, which was also signed

by Doyle, authorizing payment of $4,500 from the sale of each lot of the tract to the bank. This letter is of no assistance to appellant. It refers to payments for *sales*; it is not for a loan; it refers to payments of $4,500, not a payment of more than $16,000; it refers to payments to the bank, not to Clark.

The judgment is for the proper amount, namely, that of the encumbrance.

The judgment is affirmed.

Rattigan, J., and Christian, J., concurred.