[L.A. No. 31816. Sept. 6, 1984.]

RAUL PALOMO, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Gary Brice for Petitioner.

Ellen A. Pansky for Respondent.

**OPINION**

**THE COURT.**—The Review Department of the State Bar Court recommends that Raul Palomo be suspended from the practice of law for one year, with the suspension stayed on conditions of probation.

Petitioner was admitted to practice law in 1974. He has one instance of prior discipline; in 1980, he stipulated to public reproval for wilful violation of rules 2-111 (delivery of client files) and 5-101 (unethical business dealings with client) of the Rules of Professional Conduct.

Here, the hearing panel sustained allegations that petitioner "wilfully" violated his oath and duties as an attorney (Bus. & Prof. Code, § 6067)[1] and committed acts of dishonesty and moral turpitude when he (1) endorsed, without consent, his client's name on a check payable to the client, (2) deposited the proceeds in his payroll account rather than his trust account, (3) failed promptly to notify the client he had received the check and to pay over the funds due, and (4) misappropriated and commingled the deposited funds. (See rule 8-101, Rules Prof. Conduct.) The review department adopted the hearing panel's findings with minor modifications. It recommends that petitioner be suspended for one year, with suspension stayed on condition that he pass the Professional Responsibility Examination, maintain detailed trust account records, and file periodic reports. We uphold the findings of fact and adopt the disciplinary recommendation.

## FACTS

Certain of the facts are not in dispute. In December 1980, Jose Antonio Torres retained Robert Roman, a member of petitioner's law firm, to represent Torres in connection with the New York probate of his father's estate. Torres paid a retainer fee of $75 and signed a retainer agreement. Roman left petitioner's employ around March 1981. On April 20, 1981, petitioner's firm[2] received a partial distribution check for $3,000 from the estate's representatives. The check was payable to Torres.

Without Torres' knowledge, and without express oral or written authority, petitioner simulated Torres' endorsement on the check. It was deposited in the firm's *payroll* account. In August 1981, Torres learned that distributions had been made to other estate beneficiaries; on August 6 he consulted Roman about the status of his share. On August 21, after several inquiries from Roman, petitioner sent Torres a *trust* account check for $3,150, representing the earlier distribution plus "interest."

The disciplinary proceeding was commenced by an order to show cause served June 4, 1982. Hearing was noticed for September 20, 1982. Peti-

---

[1]All statutory references are to the Business and Professions Code unless otherwise indicated.

[2]Petitioner's own testimony suggests that, after Roman's departure, he was the only licensed attorney remaining in the firm.

tioner retained Ronald Slates to represent him. Sometime before August 1, 1982, Slates was replaced, or at least supplemented, by a second attorney, Michael Rochford.

Meanwhile, on July 28, 1982, the State Bar served interrogatories and a request for admissions, including admissions that petitioner had acted "wilfully." A request for production of documents, including payroll account bank statements, was included. The responses were due September 2, 1982. On or about August 1, 1982, the co-examiners also arranged with Rochford for petitioner's deposition to be taken on August 25.

Around August 20, petitioner's counsel withdrew for nonpayment of fees; the State Bar co-examiners were so advised. On August 24, petitioner, acting in propria persona, signed a stipulation extending discovery time until September 5 and postponing his deposition until September 10. Petitioner did not comply with the discovery requests on the extended date therefor.

On September 9, petitioner moved for a 90-day continuance of the hearing date, for relief from default on the discovery request, and for an indefinite extension of both discovery and deposition. The principal ground asserted was the delay caused by withdrawal of counsel. Petitioner asserted that he was not indigent and declined to represent himself, but he could not presently raise sufficient funds to pay retained counsel "up front."

Petitioner did not appear for his scheduled deposition on September 10. His motions, opposed by the State Bar, were denied by Assistant Presiding Referee Fried on September 17.

Petitioner appeared in propria persona at the hearing on September 20. He renewed his motion for continuance, which was denied by the hearing panel, and stated he would not proceed without counsel. However, following an emotional exchange with the presiding officer, he agreed to submit to examination. After some testimony was elicited by the State Bar examiner, petitioner stated he was unable to testify or proceed further without representation; he thereupon left the hearing room, and the hearing continued in his absence.

### DENIAL OF CONTINUANCE

Petitioner first contends he was denied due process when the hearing was not continued to permit him to retain counsel. We disagree.

Continuances of disciplinary hearings are disfavored, and a request for continuance must be supported by a factual showing of good cause.

(Rule F.3, State Bar Court Rules.) The order to show cause in this case so advised. A strong rule against unnecessary delay is essential to ensure that the public will be protected by the prompt discipline of erring practitioners.

■ Moreover, contrary to petitioner's contention, State Bar proceedings cannot be compared to criminal actions, and criminal procedural safeguards do not apply. Generally, an accused attorney has the obligation to obtain representation if he wants it, to appear at the hearing, and to present evidence. The hearing may proceed despite his voluntary absence, and his failure to participate is not grounds for a rehearing to present additional evidence. (*Yokozeki* v. *State Bar* (1974) 11 Cal.3d 436, 447 [113 Cal.Rptr. 602, 521 P.2d 858], and cases cited.)

In *Yokozeki, supra,* 11 Cal.3d 436, the accused attorney, served in Tokyo, had repeatedly advised the State Bar he could not attend the hearing because of foreign legal commitments. Nonetheless, this court found that a 14-month hiatus between the order to show cause and the final hearing date was ample time to assure any due process right to obtain counsel and prepare. (*Id.,* at pp. 445-447.)

■ In the instant case, hearing commenced only three and one-half months after first notice, and the hearing date was never continued. However, petitioner here was personally available throughout and was represented by counsel until one month before the hearing. In light of counsel's withdrawal, discovery and deposition dates were extended informally at petitioner's request. Moreover, the order to show cause cited but a single incident of misconduct, and the facts alleged were not complex. There is no serious suggestion that relevant documents and witnesses were unknown or unavailable, or that the defense otherwise presented problems of unusual subtlety.

On the other hand, petitioner's showing of "good cause" for a continuance was seriously deficient. Counsel's withdrawal occurred almost a month before the scheduled hearing. Yet petitioner's motion, made within days of the hearing date, recited no efforts to locate new counsel who might undertake his defense. Petitioner asserted that additional time was necessary to obtain funds to pay retained counsel, but he listed no steps he had taken to liquidate available assets or borrow the money necessary.

At the same time, petitioner disclaimed eligibility for appointed counsel, and he declined, even in the oral renewal of his motion, to request that counsel be appointed for him. Even in criminal matters, there is no suggestion that the qualified right to counsel of choice permits substantial delay while a defendant without immediate resources gathers the sums necessary

to induce retained counsel to proceed. (Cf., e.g., *Crooker* v. *California* (1958) 357 U.S. 433, 439 [2 L.Ed.2d 1448, 1453, 78 S.Ct. 1287]; *Ingram* v. *Justice Court* (1968) 69 Cal.2d 832, 840 [73 Cal.Rptr. 410, 447 P.2d 650, 36 A.L.R.3d 1391]; see also *Maxwell* v. *Superior Court* (1982) 30 Cal.3d 606, 613-614 [180 Cal.Rptr. 177, 639 P.2d 248, 18 A.L.R.3d 333]; *People* v. *Crovedi* (1966) 65 Cal.2d 199, 207 [53 Cal.Rptr. 284, 417 P.2d 868].)

Were we ruling on the request in the first instance, petitioner's difficulties with his counsel, plus the relative shortness of time between the order to show cause and the hearing date, might induce us to grant a continuance. Under the circumstances, however, we cannot say that denial of the request was an abuse of discretion or denied petitioner due process.

### Hearsay Evidence of Bank Balance

■ Petitioner complains that hearsay evidence of the periodic balances in his payroll account was introduced "over [his] specific objections." At the hearing, Co-examiner Robbins testified that she had looked over petitioner's bank statements in Attorney Slates' office but had not been permitted to copy them; subsequent efforts to obtain the documents by formal discovery did not succeed. She was allowed to state from notes made during the office examination that the balance in the payroll account had fallen below $3,000 on several occasions between April 20 and August 21, 1981.

Petitioner had voluntarily left the hearing well before Ms. Robbins took the stand; contrary to his assertion, the record discloses no timely objection to her testimony. Hence, the issue must be deemed waived. (*Yokozeki, supra,* 11 Cal.3d 436, 447-448, and fn. 8.)[3]

### Endorsement of Client's Check

■ The hearing panel found, among other things, that petitioner had endorsed his client's signature to the estate distribution check without Torres' knowledge or consent. ■ An attorney who does so engages in serious misconduct. (E.g., *Silver* v. *State Bar* (1974) 13 Cal.3d 134, 144 [117 Cal.Rptr. 821, 528 P.2d 1157]; *Himmel* v. *State Bar* (1971) 4 Cal.3d 786, 798 [94 Cal.Rptr. 825, 484 P.2d 993].) ■ Petitioner concedes he had no express authority from Torres, but he contends the broad power of attorney contained in the retainer agreement permitted him to endorse the check. We disagree.

---

[3]The purpose of this testimony apparently was to support a finding of "wilful misappropriation" of Torres' money. (See discussion *post.*)

The form agreement declared that Torres retained petitioner "to prosecute a claim against Client's Father's estate." It empowered petitioner "to perform *the said services* for and on behalf of the client, and in his or her name, and to do all things which the attorney may deem necessary, appropriate, or advisable." (Italics added.)

This general language was wholly ineffective to create the authority asserted. It simply confirmed that petitioner was to act as Torres' legal representative in the estate matter. Its words granted no specific power, express or implied, which would *not exist in any event* under the attorney-client relationship.

■ An attorney's general authority to pursue and collect a claim does not include the implied authority to endorse the client's signature on negotiable instruments payable to the client, since the agency can be fully performed without this power. Any such endorsement authority must be expressly granted. (*Navrides* v. *Zurich Ins. Co.* (1971) 5 Cal.3d 698, 707, fn. 6 [97 Cal.Rptr. 309, 488 P.2d 637, 49 A.L.R.3d 828]; *Helgeson* v. *Farmers Ins. Exchange* (1953) 116 Cal.App.2d Supp. 925, 927 [255 P.2d 484], disapproved on other grounds, *Navrides, supra,* at p. 712; see also *Arcade Realty Co.* v. *Bank of Commerce* (1919) 180 Cal. 318, 321 [181 P. 66, 12 A.L.R. 102]; *Cignetti* v. *American Trust Co.* (1956) 139 Cal.App.2d 744, 748 [294 P.2d 490], disapproved on other grounds, *Navrides, supra,* at p. 712.)[4]

Our past disciplinary cases have assumed that representational authority alone does not constitute the client's consent to simulation of his signature on a draft payable in his name. (*Silver, supra,* 13 Cal.3d at p. 144; *Himmel, supra,* 4 Cal.3d at p. 798.)[5] ■ Since it is undisputed that Torres gave

---

[4]The California decisions conform to the rule followed in the majority of other jurisdictions. (E.g., *Sainsbury* v. *Pennsylvania Greyhound Lines* (4th Cir. 1950) 183 F.2d 548, 553 [21 A.L.R.2d 266] [applying Md. law]; *The Florida Bar* v. *Allstate Ins. Co.* (Fla.App. 1980) 391 So.2d 238, 240; *Pearcy* v. *First Nat. Bank in Wichita* (Kan. 1949) 167 Kan. 696 [208 P.2d 217, 219]; *Central Trust Co.* v. *Hahn-Jacobsen Co.* (1935) 4 Ohio Ops. 509 [33 N.E.2d 388, 392]; *Jennings* v. *President, etc., Manhattan Co.* (1922) 203 App.Div. 802 [197 N.Y.S. 401, 404-405]; *Crahe* v. *Mercantile Trust & Savings Bank* (1920) 295 Ill. 375 [129 N.E. 120, 121, 12 A.L.R. 92]; but see, e.g., *Bailey* v. *United States* (9th Cir. 1926) 13 F.2d 325, 326-327; *John Bean Mfg. Co.* v. *Citizens Bank of Gainesville* (1939) 60 Ga.App. 615 [4 S.E.2d 924, 926]; *Dacus* v. *Maryland Casualty Co.* (1936) 40 N.M. 110 [55 P.2d 663, 666].)

[5]The retainer agreement gave petitioner authority "to do all things [he deemed] necessary, appropriate, or advisable," but these words were only expressions of the implied powers exercisable in pursuit of "the said services" for which petitioner had been retained. Such general words in powers of attorney are always limited by the express purposes of the power. (Civ. Code, § 2321.) We note parenthetically that petitioner claims no contractual lien or other authority which might permit him to deduct his fees from the payment.

no actual consent to petitioner's endorsement, the finding of misconduct is valid.[6]

WILFULNESS

■ Section 6067 permits the State Bar to recommend disbarment or suspension for "wilful" violations of an attorney's oath or duties. (See also *Inniss* v. *State Bar* (1978) 20 Cal.3d 552, 556 [143 Cal.Rptr. 408, 573 P.2d 852]; cf. *Millsberg* v. *State Bar* (1971) 6 Cal.3d 65, 74 [98 Cal.Rptr. 223, 490 P.2d 543]; but see § 6103.[7]) Petitioner concedes his office mishandled the Torres check, but he disputes the hearing panel's finding of wilfulness. As he notes, his unrebutted testimony placed the blame on human error by an employee of his firm. Thus, he urges, while the record may show his negligence, it does not demonstrate intentional misconduct or dishonesty.

At the outset, petitioner's contention overlooks his intentional and unauthorized endorsement of Torres' signature on the check. ■ Beyond that, it ignores the fact that attorneys assume a personal obligation of reasonable care to comply with the critically important rules for the safekeeping and disposition of client funds. (See §§ 6067, 6068, 6077; Rules Prof. Conduct, rule 8-101, *supra*; see also *Bernstein* v. *State Bar* (1972) 6 Cal.3d 909, 916-917 [101 Cal.Rptr. 369, 495 P.2d 1289].)

■ Attorneys cannot be held responsible for every detail of office operations. (*Vaughn* v. *State Bar* (1972) 6 Cal.3d 847, 857 [100 Cal.Rptr. 713, 494 P.2d 1257].) However, where fiduciary violations occur as the result of serious and inexcusable lapses in office procedure, they may be deemed "wilful" for disciplinary purposes, even if there was no deliberate wrongdoing. (E.g., *McMorris* v. *State Bar* (1981) 29 Cal.3d 96, 99 [171 Cal.Rptr. 829, 623 P.2d 781]; *Giovanazzi* v. *State Bar* (1980) 28 Cal.3d 465, 475 [169 Cal.Rptr. 581, 619 P.2d 1005]; *Silver* v. *State Bar, supra,* 13 Cal.3d 134, 145; *Black* v. *State Bar* (1972) 7 Cal.3d 676, 692 [103 Cal.Rptr. 288, 499 P.2d 968].) Indeed, mere evidence that the balance in a trust account fell below the amount credited to a client has been said to support a finding of wilful misappropriation. (*Jackson* v. *State Bar* (1979) 25 Cal.3d 398, 403 [158 Cal.Rptr. 869, 600 P.2d 1326].) ■ "[W]e have repeatedly held that trust account deficiencies are attributable to attor-

---

[6]Recognition of an endorsement power solely on the basis of the authority to receive payment would encourage precisely the kind of commingling and misappropriation found here.

[7]Section 6103 provides that the "causes for disbarment or suspension" include (1) "wilful" and bad faith violation of a court order and (2) "any" violation of an attorney's oath or duties.

neys—not to their employees." (*Giovanazzi, supra,* 28 Cal.3d at p. 475; see *Black, supra,* 7 Cal.3d at p. 692.)

 Some decisions imply that only "gross" negligence or "habitual" disregard of client interests warrants discipline. (See, e.g., *Inniss* v. *State Bar, supra,* 20 Cal.3d 552, 556; *Gassman* v. *State Bar* (1976) 18 Cal.3d 125, 130 [132 Cal.Rptr. 675, 533 P.2d 1147]; *Grove* v. *State Bar* (1967) 66 Cal.2d 680, 683-684 [58 Cal.Rptr. 564, 427 P.2d 164].) But the record demonstrates such pervasive carelessness here. Petitioner testified he told his office manager, Ms. M., to deposit the Torres check in the trust account; she mistakenly placed it in the payroll account instead. According to petitioner, Ms. M. had complete banking and bookkeeping control; she could draw checks on the payroll account without his specific approval by using a stamp bearing his signature. Petitioner acknowledged that he gave Ms. M. no supervision, *never* instructed her on trust account requirements and procedures, and *never* examined either her records or the bank statements for any of the office accounts.[8]

Petitioner's own testimony thus describes a pattern of gross negligence involving serious violations of an attorney's duty to oversee client funds entrusted to his care, and to keep detailed records and accounts thereof. (See *Weir* v. *State Bar* (1979) 23 Cal.3d 564, 573-574 [152 Cal.Rptr. 921, 591 P.2d 19].) These omissions resulted in a four-month delay in notifying the client that money due him had arrived, and in transmitting the funds promptly due. In the meantime, the funds were converted to the use of petitioner's office. There is no indication that petitioner would have remedied the irregularities if not pressed by the interested parties.[9] We conclude that the findings of "wilful" commingling and misappropriation are amply supported.[10]

---

[8]Petitioner now urges that he deemed it unnecessary, and even insulting, to train Ms. M. in account procedures or to supervise her closely, since she had previously handled such matters for a major law firm. He also suggests, contrary to his testimony at the hearing, that he met with his accountant monthly to review the status of office accounts. Such evidence, of course, was for the hearing panel. (See discussion, *post.*) In any event, petitioner's office administration permitted the fact that a substantial client check endorsed by him had been misdeposited, commingled, and misappropriated to escape his notice for four months. There is no indication the error would ever have been discovered but for outside inquiry. Any procedure so lax as to produce that result was grossly negligent.

[9]Petitioner points out that, when advised of his oversight, he promptly remitted the funds with "interest." While this fact may weigh in mitigation of discipline (see discussion, *post*), it does not detract from the finding of wilful violation.

[10]We thus do not reach petitioner's argument that he should not be "deemed" to have confessed wilfulness by failing to respond on time to requests for admission posing that issue. (See Code Civ. Proc., § 2033, subd. (a); rule 315, Rules Proc. of State Bar.)

## Psychological Disability

 For the first time before this court, petitioner asserts that he suffers a severe "anxiety adjustment syndrome" which both explains his misconduct and hampered his defense. He asks leave to submit a psychologist's report on his condition.

While we undertake independent review of the State Bar Court's factual findings (*Marcus* v. *State Bar* (1980) 27 Cal.3d 199, 201 [165 Cal.Rptr. 121, 611 P.2d 462]), we do not consider evidence never presented in the disciplinary proceedings below. Nor, absent an error which prevented its introduction (see discussion, *ante*), will we remand for consideration of the new evidence. (Cf., *Yokozeki* v. *State Bar, supra,* 11 Cal.3d 436, 447.)

 In any event, psychological disability, while it may ameliorate the moral culpability of an attorney's misconduct, does not immunize him from the disciplinary measures necessary to protect the public. (E.g., *Snyder* v. *State Bar* (1976) 18 Cal.3d 286, 293 [133 Cal.Rptr. 864, 555 P.2d 1104]; *Grove* v. *State Bar, supra,* 66 Cal.2d 680, 685.) Considering the overwhelming evidence that petitioner committed the misconduct charged, and in view of the light discipline proposed (see discussion, *post*), we cannot conclude that evaluation of petitioner's psychological problems would lead to a different result.

## Discipline

 Petitioner's conduct warrants at least the lenient discipline recommended by the State Bar Court. Absent mitigating circumstances, commingling and misappropriation generally call for disbarment or actual suspension; this is especially true where there is a prior record of discipline. (E.g., *Rimel* v. *State Bar* (1983) 34 Cal.3d 128, 132 [192 Cal.Rptr. 866] [misappropriation of $57,000 in client investment funds, failure to repay client loan, misleading client re status of case, failure to pay clients' taxes; disbarment]; *Warner* v. *State Bar* (1983) 34 Cal.3d 36, 49 [192 Cal.Rptr. 244, 664 P.2d 148] [one instance of withholding interest on loan from client as payment of fee, one instance of misappropriation, numerous misrepresentations to client, State Bar, and court; disbarment]; *Finch* v. *State Bar* (1981) 28 Cal.3d 659, 665 [170 Cal.Rptr. 629, 621 P.2d 253] [five incidents, including two of misappropriation, one of failure to return files, and two of failure to return unearned fees; six months' actual suspension]; *Brody* v. *State Bar* (1974) 11 Cal.3d 347, 350 [113 Cal.Rptr. 371, 521 P.2d 107] [single incident of commingling, improper retention, and misappropriation over long period and despite inquiries; one year actual suspension].)

Here, petitioner himself suggested that his lax financial procedures were not confined to the instant matter, but were typical of the period, posing a substantial threat to client interests and public confidence in general. His conduct is grounds for substantial discipline. On the other hand, petitioner apparently had no specific intent to defraud Torres, and he forwarded Torres' funds with reasonable promptness when contacted by Attorney Roman. This restitution occurred before any State Bar involvement and may therefore be entitled to some minimal weight. (Cf., e.g., *Finch, supra,* at p. 666; *Fitzpatrick v. State Bar* (1977) 20 Cal.3d 73, 88 [141 Cal.Rptr. 169, 569 P.2d 763].)

Moreover, petitioner has expressed remorse of a sort; in an October 1981 letter to the State Bar he indicated he "deeply regret[ted]" the incident and stated that "[m]y practice has undergone significant changes and shifts in personnel whereby such errors in omission as here will no longer occur." Considering that only one incident of misconduct was charged and sustained, we adopt the review department's recommendation.

It is ordered that petitioner be, and he hereby is, suspended from the practice of law for one year, that execution of the order be stayed, and that petitioner be placed on probation for that period upon the conditions of probation recommended by the Review Department of the State Bar Court. This order is effective 30 days after the opinion is filed herein, and the period of probation shall commence at that time.

Bird, C. J., and Broussard, J., concurred in the result.