[No. S004182. Aug. 17, 1989.]

IRIS WINNIFRED JONES, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Iris Winnifred Jones, in pro. per., for Petitioner.

Diane C. Yu and Truitt A. Richey, Jr., for Respondent.

**OPINION**

**THE COURT.**—We review the recommendation of the Review Department of the State Bar Court (hereinafter State Bar Court) that petitioner Iris Winnifred Jones be disbarred from the practice of law in California. Jones contends that the referee at the State Bar hearing improperly denied her request for a continuance and violated her due process rights. After considering the record and Jones's objections, we conclude that the referee's decision, which was adopted without modification by the State Bar Court, is appropriate.

 FACTS[1]

Iris Winnifred Jones was admitted to the California State Bar on June 23, 1978. The State Bar filed a notice to show cause against Jones on July 1,

---

[1] Despite several attempts by the court to notify Jones that oral argument in her case would be heard on June 15, 1989, Jones failed to make an appearance. Written notice of the date for oral argument was sent to Jones at the address provided by her on the petition for review to this court; however, the written notice was returned. Moreover, the attempts to contact Jones by telephone at the number listed on her brief were unsuccessful. We observe that it was

1985, after investigating her conduct as an attorney. Three other notices to show cause were filed against Jones on August 26 and September 26, 1985, and on January 17, 1986, respectively. The four notices to show cause, which involved a total of twenty-eight counts,[2] were consolidated before the hearing panel.

Jones's State Bar hearings spanned 11 days from June 4 through July 31 of 1986. Jones was represented by counsel at the hearings, although she is currently proceeding in propria persona. The referee placed Jones on the attorney inactive list on August 6, 1986. Shortly thereafter he issued his findings and recommendation of disbarment in a thorough, 94-page decision. His recommendation of disbarment was based in part upon conduct which occurred prior to Jones's admission to the State Bar and which continued until her placement on the inactive list.

On June 25, 1987, the State Bar Court adopted the decision of the referee without modification. Thereafter we granted Jones's petition for review as to her disbarment but denied as untimely her petition for review as to her involuntary enrollment on the inactive list.

After considering the record, we adopt all of the referee's findings. Given the voluminous record in this case,[3] we find it unnecessary to set forth each of the referee's findings in order to resolve the issues before us. Consequently, we discuss those findings that exemplify the conduct upon which the referee's recommendation of disbarment is based and summarize in outline form the remaining findings regarding Jones's misconduct:

## 1. HANS SECURITY DEPOSITS MATTER

In March 1978, James Hans retained Jones to manage real property for him.[4] At that time Jones represented to Hans that she was an attorney even though she did not become a member of the bar until June 23, 1978. In July 1979, Jones, through Tri-State, mailed Hans a check representing income

---

Jones's duty to provide the court with a correct and current address and telephone number where she could be contacted.

[2] Jones was ultimately found culpable on 24 of these counts.

[3] In addition to the referee's 94-page decision, the 11 days of hearings generated approximately 2,000 pages of transcript.

[4] Hans retained Jones through Tri-State Investment Company (hereinafter Tri-State), a California corporation formed by Jones primarily to manage real property. The referee found that Tri-State was the alter ego of Jones, as did the Oakland Municipal Court in an earlier action brought by Hans against Jones. Jones's handling of the Hans matter led to the revocations of her real estate license and the licensing of Tri-State. The referee concluded that Jones's relationship with Tri-State violated numerous State Bar Rules of Professional Conduct.

generated from his real property. Although Jones testified at the hearing that the check was drawn upon a trust account, the referee found that this was not the case. Moreover, the check did not clear due to lack of funds. When Hans complained to Jones about the dishonored check, Jones asserted that it would be honored after July 24, 1979. Despite Jones's promise, the check was never honored.

In August 1979, Hans sold one of the properties that Jones managed. Despite requests from Hans, Jones refused to deposit into escrow certain tenant security deposits that she was holding, claiming those funds were hers under the management contract. As a result, Hans filed an action against Jones in Oakland Municipal Court.[5] On July 10, 1980, the court found that Jones did not segregate funds held for Tri-State, herself or clients, and entered a money judgment, including punitive damages, against Jones. Jones has never satisfied the judgment, asserting that she was absolved of the debt because it was discharged in bankruptcy.

Based upon her conduct in the Hans matter, the referee concluded: 1) that Jones's retention of the security deposits and other funds she held for Hans to cover eviction fees and expenses amounted to the collection of illegal fees in violation of Rules of Professional Conduct, former rule 2-107(A);[6] 2) that Jones's issuance of the check against insufficient funds and her refusal to pay Hans the tenant security deposits upon the sale of his property constituted a failure to promptly deliver to Hans his property in violation of rule 8-101(B)(4); and 3) that Jones's issuance of a "fraudulent" check involved dishonesty and moral turpitude and thus violated Business and Professions Code section 6106.

## 2. WARD MATTER

In January 1980, Jones entered into a property management agreement with Lawrence L. Ward. Pursuant to the agreement, Jones was to keep the monthly mortgage payments on Ward's property current from the property rentals she collected.

On February 11, 1980, Jones sent Ward a statement showing receipts from his property of $4,350 and a mortgage disbursement therefrom of $1,858. Although the statement was dated February 11, the loan disbursement check was not actually issued until February 15, 1980. That check was returned for insufficient funds. At the hearing Jones was confused as to

---

[5] One of the counts in the lawsuit also involved Jones's failure to properly pursue an eviction matter for which Hans had also retained her.

[6] All further rule references are to the former State Bar Rules of Professional Conduct unless otherwise indicated. New rules became operative May 27, 1989.

what sort of account the check was drawn from. Based upon Ward's testimony, the referee found that the check was drawn from a general account, not a trust account.

Jones also failed to make the March and April mortgage payments, although in March Jones had again prepared a statement showing a $1,858 mortgage payment. The referee found that in both March and April Jones received sufficient rental income from the property to make the mortgage payment. Jones testified that the March payment was not made because money had been deposited into the incorrect bank account and that as soon as the mistake was corrected she paid Ward in full. She also testified that the April payment was not accepted by the bank because of the delinquency arising from the nonpayment the previous month. However, she produced no evidence supporting her testimony. Moreover, Ward testified that Jones told him the March and April payments were not made due to a mistake by her bank and that Jones only made a partial payment to Ward, including a third party check that was not honored. The referee found that in fact Ward had to pay substantial sums from his own resources to bring the loan current and prevent foreclosure on his property.

Ward filed an action in Alameda County Superior Court against Jones and Tri-State on June 4, 1980. On or about December 1, 1981, Ward's counsel received in the mail Jones's responses to interrogatories that he had propounded to her. These responses were dated November 10, 1981, and were accompanied by a proof of service by mail showing a mailing date of November 6, 1981. However, the envelope in which the responses arrived was postmarked November 25, 1981. Because of these discrepancies, the trial court sanctioned Jones by entering a default against her for willful failure to comply with orders of the court regarding discovery. After a default hearing, the trial court entered a judgment of $40,615.96, including $15,000 in punitive damages, against Jones. Ward has been unable to collect on the judgment.[7]

Based upon Jones's conduct in the Ward matter, the referee concluded: 1) Jones failed to deposit the funds she received on behalf of Ward into a segregated bank account labelled "Trust Account," "Clients' Funds Account," or words of similar import in violation of rule 8-101(A); 2) Jones's written statements falsely stating that she had made two payments of $1,858 constituted a failure to render appropriate accounts of Ward's funds in violation of rule 8-101(B)(3); 3) Jones's issuance of the February mortgage payment against insufficient funds and her failure to make the March and

[7]Having failed to collect on the judgment, Ward filed an application for reimbursement from the Real Estate Education, Research and Recovery Fund, pursuant to Business and Professions Code section 10471, and was awarded $20,000, the maximum amount allowed.

April mortgage payments constituted a failure to promptly pay or deliver to Ward his money in violation of rule 8-101(B)(4); 4) Jones's improper handling of Ward's money was inconsistent with her duties as an attorney in violation of Business and Professions Code section 6103; and 5) that Jones's issuance of the check drawn on insufficient funds involved dishonesty and moral turpitude in violation of Business and Professions Code section 6106.

### 3. EASLEY MATTER

Letha Lee Easley retained Jones in 1981 to represent her in connection with financial problems involving three houses and a mobilehome she owned with her husband. To resolve the problems, Jones and Easley, who the referee found were completely unsophisticated in business matters, agreed that Jones would assume ownership and the remaining loan payments on the mobilehome. This transaction was never reduced to writing, and Jones never suggested that Easley obtain advice from other counsel regarding the transaction. Moreover, the bank that financed the mobilehome continued to regard Easley as the person responsible for the loan payments.

Jones made no payments on the mobilehome loan, causing the loan to become delinquent. When Easley learned of the deficiency, she contacted Jones for advice. Jones advised Easley to transfer ownership in two of the houses to her daughter for no consideration in order to avoid the judgment and possible levy on them which the bank could obtain as a result of the deficiency resulting from the default on the mobilehome loan. Jones further advised Easley to file a petition under chapter 13 of the Bankruptcy Code even though Easley's indebtedness was less than $7,000 and her equity in the houses was approximately $50,000. Based upon Jones's advice, Easley transferred the houses to her daughter and had Jones file for relief under chapter 13 of the Bankruptcy Code in bankruptcy court in Oakland.

As part of the bankruptcy petition, Jones stated that Easley transferred two houses to her daughter because she feared attachment by creditors. Judge Wolfe, the bankruptcy judge before whom Jones appeared in the Easley matter, testified at Jones's disciplinary hearing that this statement amounted to "a blueprint for fraudulent transfer." Moreover, in her initial chapter 13 plan, Jones proposed payments to the bankruptcy trustee of $40 a month and dividends to unsecured creditors of 1 percent. Because the published policy of the Oakland bankruptcy court was not to approve plans with such low payments, Jones's proposal was rejected.

After the chapter 13 plan was rejected, Jones filed a voluntary conversion from chapter 13 to chapter 7 of the Bankruptcy Code. Judge Wolfe testified

that such a conversion would have forced the trustee to set aside the fraudulent conveyances of the two houses to her daughter and would have deprived Easley of obtaining a homestead or any other property exemption. Moreover, although all of Easley's property had vested in the trustee and an automatic stay had issued, Easley was keeping current all of her indebtedness. This included a payment schedule she had negotiated without the help of Jones with the bank financing her mobilehome. Thus, upon representations by the bankruptcy trustee that chapter 7 relief was totally inappropriate under these circumstances, the bankruptcy court dismissed Easley's chapter 7 petition.

The bankruptcy court also issued an order of examination sua sponte on whether payments made by Easley to Jones for her legal services were excessive. On November 16, 1983, the bankruptcy court entered an order for refund of attorney fees. The court found that the services rendered by Jones to Easley were not only worthless but had caused Easley great harm. Thereafter, Jones gave Easley a check for $385 that was returned for insufficient funds. The trustee eventually paid Easley the $385.

At Jones's disciplinary hearing, Judge Wolfe testified that Jones's conduct in the Easley matter was incompetent, that this was representative of her conduct in other cases in which she had appeared before him and that the Oakland bankruptcy court had considered banning her from practice in that court. He also testified that he filed a complaint with the State Bar regarding Jones's handling of the Easley matter.

Based upon Jones's conduct in the Easley matter, the referee concluded: 1) Jones violated rule 5-101 by entering into a business transaction with Easley and acquiring a possessory interest adverse to Easley without fully disclosing and transmitting in writing to Easley the terms of the transaction, or giving Easley a reasonable opportunity to seek the advice of independent counsel in connection with the transaction; 2) Jones violated rule 6-101(1) (as in effect in 1981) by performing legal services for Easley with the knowledge that she did not possess the learning and skill of lawyers in good standing who perform, but do not specialize in, similar services and who practice in the same locality under similar circumstances; 3) Jones violated rule 6-101(2) (as in effect in 1981) by failing to use reasonable diligence and her best judgment in the exercise of her skill and in the application of her learning to accomplish the purpose for which she was employed by Easley; 4) Jones violated Business and Professions Code section 6103 because her handling of the Easley matter violated her oath and duties as an attorney; and 5) the issuance of the bad check to Easley involved dishonesty and moral turpitude and thus violated Business and Professions Code section 6106.

### 4. WATSON MATTER

Charles Daniels retained Jones before May 1981 to represent him in an unlawful detainer action against Geraldine Watson. Judgment was ultimately entered against Watson, and Daniels was awarded possession of the premises and money damages and costs. The judgment did not award or mention attorney fees. Watson thereafter won a stay of execution and entered into a stipulated settlement with Jones.

Subsequent to the stipulated settlement, Jones sent a letter to Watson representing that the court had awarded $250 in attorney fees but had inadvertently omitted the award from the judgment. The letter demanded payment of the $250 "without necessitating the office having the Court amend the judgment." At her disciplinary hearing Jones was unable to offer any transcript of proceedings or other evidence to justify her statement that the court had inadvertently omitted an award of attorney fees from the judgment. The only support Jones offered for her contention was her testimony, wherein she stated: "Evidently I was at the court hearing. The court probably awarded—whenever there is a lease agreement in any file, you automatically get attorney's fees if the lease agreement provides for it."

The referee concluded that Jones's false representation to Watson that the court had awarded $250 in attorney fees was: 1) an attempt to collect an illegal fee in violation of rule 2-107; 2) an act inconsistent with her oath and duties as an attorney and thus a violation of Business and Professions Code section 6103; 3) an act involving moral turpitude and dishonesty and thus a violation of Business and Professions Code section 6106; and 4) an act of deceit of a party in violation of Business and Professions Code section 6128, subdivision (a).

### 5. PERKINS MATTER

On January 23, 1983, Jones filed a petition in Alameda County to have Charles Perkins appointed as conservator of the estate of Eugene Perkins, who was Charles's brother. Approximately 10 months after Charles was appointed conservator of his brother's estate, Eugene died in Louisiana. Thereafter, a Louisiana court appointed Charles as either the administrator or executor of Eugene's estate.

Subsequently, Jones filed a "First or Current Account and Report of Conservator and Petition for Fees" on behalf of Charles. The petition was heard in the court of Judge Ramsey, who testified at Jones's disciplinary hearing. He testified at Jones's State Bar hearing that the petition filed by Jones was "wholly improper" because it contained numerous flaws of a

substantial nature, including Jones's payment to herself of $320 in fees despite the document's assertion that all cash had been used for funeral and burial expenses.

At the first hearing on the petition, Rochelle Leeper, an associate at Jones's law firm, appeared on behalf of Jones. Ms. Leeper, who was a bar member of not more than two months' standing, informed the court that she was not sufficiently familiar with the issues to correct the errors in the petition. The court continued the matter to September 11, 1984. On that date, Jones did not appear, and the court ordered citations issued for Jones and Charles and put the matter over until October 9, 1984. Jones appeared on this date, but because an essential party had not been served the matter was again put over. Jones appeared at the next hearing 15 minutes late, and stated: "[L]et me admit to the Court that I really don't know where this particular matter is." Judge Ramsey then informed Jones that he did not feel she was acting competently. He admonished her to file her papers in a proper manner and stated that if she failed to do so again he would notify the State Bar.

The matter was continued twice more before Jones's next appearance. At her next appearance, Jones asserted that all the deficiencies were cured but then asked for further help from the court because she did not have the necessary order. Judge Ramsey responded by declaring that he would impose sanctions and continued the matter to give Jones an opportunity to show why he should not do so. Jones then retained counsel to help her, and the conservatorship was finally concluded successfully.

In regard to the Perkins matter, the referee concluded: 1) Jones violated rule 6-101(A)(2) (as in effect between October 1986 and May 1989) by intentionally and with reckless disregard failing to handle the matter competently; 2) Jones violated rule 6-101(B)(1) (as in effect between October 1986 and May 1989) by accepting employment in the matter with knowledge that she did not have sufficient ability to perform her duties competently; and 3) Jones's acceptance of employment with knowledge that she did not have sufficient ability to perform competently constituted a failure to uphold her professional oath and duties and thus violated Business and Professions Code section 6103.

### 6. LEE MATTER

In April 1983, William H. Lee retained Jones to represent him in his marital dissolution. He also retained Jones in July of that year, on a separate matter, to recover unpaid wages for him. Lee paid a total of $950 in legal fees to Jones; however, Jones performed no services for Lee in either

matter and refused to return any part of the $950 despite Lee's requests. Lee finally brought an arbitration proceeding against Jones and was awarded $950. Jones never has paid Lee the amount.

With regard to the Lee matter, the referee concluded: 1) Jones violated rule 2-111(A)(2) by effectively withdrawing from employment without taking reasonable steps to avoid foreseeable prejudice to Lee, without allowing Lee time for employment of other counsel, and without delivering to Lee papers and other property to which he was entitled;[8] 2) Jones violated rule 2-111(A)(3) by failing and neglecting to return to Lee the unearned fees; 3) Jones violated rule 6-101(2) (as in effect in 1983) in that she failed to use reasonable diligence and her best judgment in the exercise of her skill and in the application of her learning to accomplish the purposes for which she was employed, and that Jones effectively abandoned Lee; and 4) Jones violated Business and Professions Code section 6103 in that by abandoning Lee she violated her oath and duties as an attorney.

## 7. REMAINING VIOLATIONS

In addition to the above violations, the referee also found that Jones: a) Violated rule 2-107 (prohibition against unconscionable fee) by charging a client $355 for no substantial services.

b) Violated rule 2-111 (addressing the proper method for an attorney to withdraw from employment) by failing to appear at a client's deposition and abandoning the client without court approval; by prejudicing at least three different clients in separate matters by untimely withdrawals; and by failing to promptly return an unearned fee after withdrawing from employment in one instance.

c) Violated rule 3-101(A) (prohibiting an attorney from aiding a person in the unauthorized practice of law) by having a company she owned undertake eviction and unlawful detainer actions even though the company was not licensed to practice law.

d) Violated rule 3-102 (regulating financial arrangements with nonlawyers) by sharing legal fees with a nonlawyer and by circulating brochures

---

[8] Although Jones does not challenge the referee's conclusion that she effectively withdrew from employment, we have some concern about whether the facts adequately support such a finding. An attorney's failure to perform the services for which he is retained is generally considered an intentional or reckless failure to perform services competently (rule 6-101(A)(2)) rather than a withdrawal from employment. (*Guzzetta* v. *State Bar* (1987) 43 Cal.3d 962, 976 [239 Cal.Rptr. 675, 741 P.2d 172 ].) However, we find it unnecessary to address this issue since Jones has failed to raise it. Moreover, a finding that the referee's conclusion is not supported by the facts would not affect the ultimate conclusion that Jones's misconduct warrants disbarment.

offering compensation in the form of reduced legal fees to persons securing clients for her.

e) Violated rule 5-101 (addressing an attorney's duty to avoid interests adverse to a client's interests) by renting out a client's property, without the client's consent, for the purpose of benefiting herself. The adverse interest was acquired without providing the client with a written disclosure or advice to seek independent counsel.

f) Violated rule 6-101(2) (involving an attorney's duty to act competently, as applied prior to October 1983) by failing to use reasonable diligence and speed to accomplish the end for which she was employed in at least five separate instances.

g) Violated rule 6-101 (dealing with failing to act competently, as in effect after 1983) by failing to apply sufficient learning, skill, and diligence necessary to discharge her duties in a foreclosure action; by intentionally or with reckless disregard failing to perform competently in at least four separate matters; and by repeatedly accepting employment in matters she knew or should have known she was not competent.

h) Violated rule 7-105 (requiring an attorney to employ only such means as are consistent with truth) by intentionally misleading the court by, among other things, filing several false proofs of service and at least two false declarations.

i) Violated rule 8-101 (dealing with an attorney's duties when receiving and holding the property of clients) by repeatedly commingling funds held on behalf of her clients with her own funds and using them for her own benefit; by not notifying clients of the receipt of funds in two instances; by not keeping complete records and not giving accountings to her clients in two instances; and by failing to promptly pay her clients monies that they were entitled to receive in three separate instances.

j) Violated Business and Professions Code section 6068 (listing the various duties of an attorney) by filing false proofs of service; by filing a false declaration indicating that she had personally seen and given notice to opposing counsel when she had not; by filing a demurrer without a proof of service; by filing a false declaration that a party to an action was in default on rental payments; by abandoning a client because of nonpayment of fees; and by wholly failing to cooperate in either her State Bar investigation or her disciplinary hearings.

k) Committed numerous acts of moral turpitude and dishonesty in violation of Business and Professions Code section 6106 (stating that acts

involving moral turpitude, dishonesty or corruption constitute cause for disbarment or suspension) by issuing fraudulent checks against insufficient funds; by filing false proofs of service and false declarations; by misleading the court by filing a demurrer without noticing opposing counsel; by deceitfully using a dummy purchaser of a home to forestall foreclosure and eviction of a client; and by dishonestly handling funds received from rental property by renting the property without the authority of the owner/clients.

*l*) Violated Business and Professions Code section 6128, subdivision (a) (making deceit of the court or any party a misdemeanor) by acting in numerous instances with intent to deceive the court and opposing counsel.

The referee also concluded that Jones, who testified at her disciplinary hearings, was not a credible witness. He stated that she was "evasive, dilatory and self contradictory in her testimony" and that "[i]t was also clear from [her] testimony at these Hearings, and her reactions to the problems facing her therein, that she has no comprehension whatever of the duties of a member of the legal profession or of the legal ramifications or consequences, for herself or her clients, nor does she have any idea of the responsibilities of a lawyer to the judicial system of which he or she is an integral part." Based on the evidence presented, the referee concluded that Jones was not a competent practitioner.

Although the referee found no substantial circumstances mitigating Jones's professional misconduct, he found numerous aggravating circumstances. The referee also observed that Jones failed to cooperate during the course of the hearings and failed to demonstrate any regret, remorse or apology to the bar, her clients, the court or the public for her conduct. Consequently, the referee concluded that Jones should be disbarred from the practice of law. The State Bar Court adopted the referee's findings and recommendation without modification.

## DISCUSSION

In reviewing the findings of the State Bar Court, this court must exercise its independent judgment to determine whether the facts and circumstances of Jones's case justify the discipline recommended. (*In Re Ford* (1988) 44 Cal.3d 810, 815 [244 Cal.Rptr. 476, 749 P.2d 1331]; *In re Vaughn* (1985) 38 Cal.3d 614, 618 [213 Cal.Rptr. 583, 698 P.2d 651].) However, the State Bar Court's recommendation is entitled to great weight, and it is Jones who bears the burden of showing that the State Bar Court's findings are not supported by the evidence and that its recommendation as to the appropriate degree of discipline is erroneous or unlawful. (*In re Ford, supra,* 44 Cal.3d at pp. 815-816.) Jones must demonstrate that the charges of

unprofessional conduct are not sustained by convincing proof and to a reasonable certainty. (*Kapelus* v. *State Bar* (1987) 44 Cal.3d 179, 184 [242 Cal.Rptr. 196, 745 P.2d 917].)

██ On July 30, 1986, the day before the last day of her disciplinary hearings, Jones requested a continuance of the hearings until September 8, 1986. The hearing referee denied the request. Jones contends that the denial was improper because she had subpoenaed witnesses to appear on September 8, 1986, in the reasonable belief that a hearing was scheduled for that day. She argues that sometime in mid-July she received a letter dated July 14, 1986, from opposing counsel indicating that hearing dates had been scheduled for July 30, 1986, and September 8, 1986. She asserts that, after confirming the September 8, 1986, date with her attorney, she subpoenaed her witnesses to appear on that day. Jones claims she did not learn until July 30, 1986, that the next day was going to be the last day of her disciplinary hearings. Thus, she concludes that her request for a continuance should have been granted.

Jones also contends that the continuance should have been granted on the basis of "surprise" in that she was "surprised" to discover that there would not be a hearing on September 8, 1986. She asserts that another "surprise" warranting the continuance was when the State Bar subpoenaed a witness who unexpectedly gave testimony adverse to her. Jones provides virtually no information regarding the name of the witness or the content of the "unexpected," adverse testimony.

Jones's arguments are without merit. ██ Continuances are generally disfavored in disciplinary proceedings, and the hearing referee has discretion to exercise reasonable control over the proceedings in order to avoid unnecessary delay. (*Palomo* v. *State Bar* (1984) 36 Cal.3d 785, 791-792 [205 Cal.Rptr. 834, 685 P.2d 1185]; *Dixon* v. *State Bar* (1982) 32 Cal.3d 728, 736 [187 Cal.Rptr. 30, 653 P.2d 321].) ██ An examination of the record indicates that the hearing referee acted reasonably in denying Jones's request for a continuance. The record establishes that Jones should have known long before she sought the continuance that no hearings were scheduled for beyond July 31, 1986. The letter Jones received indicating that a hearing was scheduled for September 8, 1986, was dated July 14, 1986. At a hearing held on July 16, 1986, the parties discussed future hearing dates. Jones's attorney participated in the discussion, and Jones was apparently present. During the course of the discussion several possible hearing dates were discussed, although the parties ultimately decided upon the July 30 and 31, 1986, dates. In regard to these two dates, the referee stated, "Let's leave it that way, and we shall plan to be in session on the 30th and the 31st, and what happens after that will depend on what happens then."

Moreover, in denying Jones's request for a continuance, the referee stated that he had repeatedly asked Jones's counsel how many witnesses Jones expected to produce and how much time their testimony would take. Jones's attorney had responded to these requests by reporting that he had been unable to obtain from Jones the names, addresses or, except in general terms, number of witnesses. ■ Although Jones was entitled to a reasonable opportunity to be heard at the disciplinary proceedings, it was her responsibility to present evidence on her own behalf. (See *Slaten* v. *State Bar* (1988) 46 Cal.3d 48, 57 [249 Cal.Rptr. 289, 757 P.2d 1].) ■ The 11 days of hearings in this case were held 6 months after the last notice to show cause was issued, thus giving Jones ample time to adequately prepare her defense. Nevertheless, Jones requested more time on the day before the last day of her hearings. Clearly, Jones may not wait until the last possible minute to request a continuance and then attempt to shift the responsibility for her inaction onto the State Bar. (See, e.g., *Slaten* v. *State Bar, supra*, 46 Cal.3d at pp. 58-59; *Palomo* v. *State Bar, supra*, 36 Cal.3d at pp. 791-792.) Thus, the hearing referee's denial of the request for a continuance was reasonable given Jones's failure to avail herself of the ample amount of time she was provided to prepare her defense. (See *Palomo* v. *State Bar, supra*, 36 Cal.3d at p. 792; *Yokozeki* v. *State Bar* (1974) 11 Cal.3d 436, 445-447 [113 Cal.Rptr. 602, 521 P.2d 858].)

■ In a related argument, Jones argues that the disciplinary hearing failed to meet the requirements of procedural due process because she was prevented from presenting evidence on her own behalf. ■ "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" (*Mathews* v. *Eldridge* (1976) 424 U.S. 319, 333 [47 L.Ed.2d 18, 32, 96 S.Ct. 893], quoting *Armstrong* v. *Manzo* (1965) 380 U.S. 545, 552 [14 L.Ed.2d 62, 85, 85 S.Ct. 1187].) ■ Here we find no lack of due process since Jones's failure to present witnesses on her own behalf was due to her own lack of diligence. (*Ante*, at pp. 287-288.) Furthermore, although Jones did not present witnesses on her own behalf, she had the opportunity to cross-examine all of the approximately 32 witnesses that testified at the hearings. Jones also testified on her own behalf on numerous occasions and introduced 14 exhibits. Thus, we conclude that Jones's due process rights were not violated.[9]

---

[9]Moreover, in ruling on Jones's application for hearing de novo based upon her alleged inability to present witnesses on her own behalf, the referee concluded that the proposed additional evidence would be "for the most part cumulative" to the testimony of Jones and others already of record. He stated that the evidence would, at most, only marginally affect "a total of eleven counts out of the twenty-four in respect of which [Jones] was found culpable, and would not be relevant to the General Conclusions of culpability. . . . Such evidence, if admitted, therefore, could have no effect on the overall conclusion that [Jones] is unfit to practice law . . . ."

■ After carefully reviewing the record, we conclude that Jones has failed to demonstrate that the charges of unprofessional conduct are not sustained by convincing proof and to a reasonable certainty.[10] (See *Kapelus v. State Bar, supra*, 44 Cal.3d at p. 184.) In determining that Jones engaged in unprofessional conduct, the referee considered approximately 124 exhibits introduced into evidence by the State Bar, and heard the testimony of some 32 witnesses, including 2 judges before whom Jones had appeared. Both the exhibits and the testimony of the witnesses provide overwhelming support for the referee's findings. Although Jones's testimony at times contradicted that of the other 32 witnesses, her testimony lacks probative value since the referee found her not to be a credible witness. The referee is in the best position to resolve credibility questions, because he is able to observe the demeanor of the witnesses and evaluate the character of the witnesses. (*Galardi* v. *State Bar* (1987) 43 Cal.3d 683, 690 [238 Cal.Rptr. 774, 739 P.2d 134].) Accordingly, we see no reason to depart from the referee's findings.

## CONCLUSION

■ The facts establish that Jones has habitually exhibited a flagrant disregard and lack of understanding of the duties and responsibilities of her profession. Her acts of misappropriating client funds, deceiving parties, and misleading the court constitute serious breaches of the professional standards of conduct for attorneys. Although Jones has no previous disciplinary record, the present violations commenced before her admittance to the bar and continued until her involuntary transfer to the inactive list. Moreover, the facts reflect that Jones has continually neglected her clients and failed to act competently. Thus, the lack of prior discipline is not a substantial mitigating circumstance.

As a mitigating factor, Jones argues that she represented individuals of limited financial means. She asserts that the public benefitted from her work because persons of limited financial means generally have difficulty obtaining legal representation. While an attorney's representation of persons of limited financial means is commendable, such representation cannot justify the type of conduct or lack of concern that Jones has demonstrated. An incompetent attorney, such as Jones, should not be allowed to practice law regardless of whom he represents.

---

[10] Jones devoted a substantial portion of her eight-page petition for review to arguing that the evidence did not support the referee's decision to involuntarily place her on the attorney inactive list. However, as previously indicated, we denied as untimely that part of Jones's petition for review seeking review on this issue. (*Ante*, at p. 277.) Thus, we do not address Jones's arguments involving her placement on the attorney inactive list.

In light of the seriousness of Jones's actions and the lack of mitigating circumstances, it is ordered that petitioner Iris Winnifred Jones be disbarred and that her name be stricken from the roll of attorneys in this state. It is further ordered that she comply with the requirements of rule 955 of the California Rules of Court and perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, of the effective date of this order. Failure to comply with rule 955 may result in imprisonment. (Bus. & Prof. Code, § 6126, subd. (c).) This order is effective upon the finality of this decision in this court. (See Cal. Rules of Court, rule 24(a).)

Petitioner's application for a rehearing was denied October 11, 1989.