[No. S014721. Feb. 7, 1991.]

BARRY B. MARTIN, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

1056

**COUNSEL**

Barry B. Martin, in pro. per., for Petitioner.

Diane C. Yu, Richard J. Zanassi, Carole Hann and Geri Von Freymann for Respondent.

**OPINION**

**THE COURT.**—We review the recommendation of the State Bar that petitioner Barry B. Martin be disciplined for several instances of professional misconduct. The misconduct included mishandling five matters during a four-year period. In view of the purpose of professional discipline, we conclude the recommendation is appropriate. We therefore suspend petitioner from the practice of law for five years, stay his suspension, and place him on probation for five years on conditions including actual suspension for two years.

Petitioner was admitted to the practice of law in this state on June 23, 1978. He has no record of prior discipline.

On September 30, 1988, the Office of Trial Counsel of the State Bar (Office) served on petitioner[1] a notice to show cause charging him with five counts of professional misconduct. The notice advised him that a default could be entered if he failed to file a written answer to the notice within 20 days or failed to appear at the formal hearing. The notice also advised him that an entry of default could result in an admission of the charged misconduct and constitute a bar to further participation in the proceedings. On October 31, 1988, the notice to show cause was returned unopened to the Office.

On November 2, 1988, the Office served petitioner with a notice of application to enter a default. The notice contained the same warning as the notice to show cause. Two days later, the Office faxed a copy of the notice to show cause to petitioner. Petitioner filed his answer on November 28, 1988.

The Office served petitioner with a notice of the time and place of the mandatory settlement conference. However, on the date the conference was to take place (Jan. 17, 1989) petitioner failed to appear. The matter was then set for a formal hearing. On March 6, 1989, the Office served a notice in lieu of service of a subpoena on petitioner, requesting his attendance at a hearing to be held on March 21-22, 1989.

On March 19, 1989, petitioner was involved in a car accident. He called the Office on the following day to request a stipulation to a continuance because of his "severe and disabling" injuries. The Office declined his request.

On March 21, 1989, petitioner's associate specially appeared at the hearing to present a written motion for a continuance.[2] After considering the motion and supporting declaration, associate counsel's testimony, and a disability certificate signed by petitioner's chiropractor, the referee denied the motion and entered a default.[3]

The hearing convened in petitioner's absence. The referee's findings and conclusions are as follows.

*Hashemi Matter*

In October 1984 Sedighe Hashemi employed petitioner to represent her in a civil action for wrongful arrest against J. C. Penney Company.

---

[1] The Office served all notices by certified mail to petitioner's address of record.
[2] The associate appeared solely to deliver the motion. Petitioner intended to represent himself in the matter.
[3] The case was heard by a single referee sitting as a hearing panel.

Although petitioner filed a civil action on her behalf and paid the filing fee of $93, his check was returned for insufficient funds.

In this matter, petitioner wilfully violated Business and Professions Code sections 6068, subdivision (a), and 6106[4] by causing checks to be written and presented that he knew or should have known would be dishonored, violating his oath and duties as an attorney, and committing an act involving dishonesty and moral turpitude.[5]

*Espinosa Matter*

In November 1980 Roger Espinosa hired petitioner to represent him in a personal injury matter. Petitioner filed a complaint in July 1981, but thereafter failed to perform any services or communicate with his client. Four years later Espinosa hired a new attorney who settled the case for $6,000. Petitioner impeded settlement negotiations by falsely stating to Espinosa and his counsel that he had delivered a demand letter to the insurance carrier.

In addition, Espinosa and his new attorney sued petitioner for professional malpractice. Petitioner failed to respond to the complaint or pay a default judgment of $15,068 entered in favor of Espinosa in that action.

In this matter, petitioner wilfully violated sections 6068, subdivision (a), and 6106, and Rules of Professional Conduct, former rules 2-111(A)(2), 6-101(A)(2), and 6-101(B)(2),[6] by violating his oath and duties as an attorney, committing an act involving dishonesty and moral turpitude, withdrawing from employment without taking reasonable steps to avoid foreseeable prejudice to the rights of his client, and intentionally failing to perform legal services competently.

*Koshay Matter*

In August 1983 John Koshay employed petitioner to represent him in a personal injury matter. Although petitioner told Koshay that he filed a complaint and was negotiating with the insurance carriers, he in fact failed

---

[4] Unless otherwise noted, all statutory references hereafter are to the Business and Professions Code.

[5] In each client matter, the referee concluded that petitioner had committed wilful violations of section 6103. However, we held in *Baker* v. *State Bar* (1989) 49 Cal.3d 804, 815 [263 Cal.Rptr. 798, 781 P.2d 1344], that "since this section does not define a duty or obligation of an attorney, but provides only that violation of his oath or duties defined elsewhere is a ground for discipline, petitioner did not violate this section."

[6] Unless otherwise noted, all references hereafter to rules are to the former Rules of Professional Conduct. New Rules of Professional Conduct became operative May 27, 1989.

to file a complaint, perform any services, or further communicate with his client. In addition, Koshay gave petitioner his slightly damaged Rolex watch to use as evidence; petitioner never returned the watch despite his client's request to do so.

In this matter, petitioner wilfully violated sections 6068, subdivision (a), and 6106, and former rules 2-111(A)(2) and 6-101(A)(2), by violating his oath and duties as an attorney, committing an act involving dishonesty and moral turpitude, withdrawing from employment without taking reasonable steps to avoid foreseeable prejudice to the rights of his client and without delivering to the client papers and property, and failing to perform legal services competently.

*Timothy Gray Matter*

In April 1981 Donald Gray employed petitioner to represent his son in a personal injury matter. Petitioner filed a complaint in April 1982 but thereafter failed to perform the required services or respond to his client's numerous telephone calls and correspondence.

In this matter, petitioner wilfully violated section 6068, subdivision (a), and former rules 2-111(A)(2) and 6-101(A)(2), by violating his oath and duties as an attorney, withdrawing from employment without taking reasonable steps to avoid foreseeable prejudice to the rights of his client, and failing to perform legal services competently.

*Daniel Gray Matter*

In August 1982 Donald Gray again employed petitioner to represent another son in a civil matter. Petitioner filed a complaint in August 1983 but thereafter failed to perform the required services or respond to his client's numerous telephone calls and correspondence.

In this action, petitioner wilfully violated sections 6068, subdivision (a), and former rules 2-111(A)(2) and 6-101(A)(2), by violating his oath and duties as an attorney, withdrawing from employment without taking reasonable steps to avoid foreseeable prejudice to the rights of his client, and failing to perform legal services competently.

*Evidence of Mitigation and Aggravation*

In mitigation, the referee noted that petitioner had been a member of the State Bar for 10 years and had no prior record of discipline. However, his first act of misconduct occurred within three years after his admission to the

bar. The State Bar also placed in evidence a letter from a former client stating that petitioner had given him excellent representation.

In aggravation, the referee found petitioner's misconduct resulted in substantial harm to his clients; his acts spanned a four-year period; he intentionally misled his successor attorney in the Espinosa matter; he failed to return a valuable watch in the Koshay matter; and he misrepresented to his clients the status of their cases.

Based on this evidence, the referee recommended that petitioner be suspended for five years, with a stay of suspension and imposition of probation for five years on conditions including actual suspension for two years and restitution to his clients.[7] The Office served on petitioner a notice of the referee's decision in April 1989.

Under the State Bar Rules of Procedure, rule 555.1(b), a petitioner may seek relief from default within 75 days after entry of default. Petitioner failed to do so.

On November 2, 1989, the Review Department of the State Bar (hereafter review department) sent a notice to petitioner advising him that the matter would be set for a review hearing and inviting the parties to address two issues: whether the degree of discipline was adequate and whether it was appropriate to order, as restitution, the payment of the punitive-damages portion of a judgment against petitioner. Petitioner did not respond to the notice or appear at the hearing.

On December 26, 1989, by a vote of 13 to 1, the review department adopted the referee's recommendation.[8]

---

[7] The referee relied on the Standards for Attorney Sanctions for Professional Misconduct (Rules Proc. of State Bar, div. V), standards 2.6, 2.3, and 2.4(b). (All further references to standards are to these provisions.) Under standard 2.6, the suggested level of discipline for violations of section 6068 is disbarment or suspension depending on the gravity of the offense or the harm to the client. The same level of discipline is suggested for violations of section 6106 under standard 2.3. Under standard 2.4(b), the wilful failure to perform services or communicate with a client shall result in reproval or suspension depending on the extent of the misconduct and the degree of harm to the client.

[8] The review department modified the referee's recommendation by adding that petitioner's actual suspension would continue until he returned the Rolex watch to his client or pay him $1,000, and deleting the requirement that petitioner pay interest on the $1,000 or make restitution to another client.

## DISCUSSION

### I

■ "In reviewing the findings of the State Bar Court, this court must exercise its independent judgment to determine whether the facts and circumstances of [petitioner's] case justify the discipline recommended. [Citations.] However, the State Bar Court's recommendation is entitled to great weight, and it is [petitioner] who bears the burden of showing that the State Bar Court's findings are not supported by the evidence and that its recommendation as to the appropriate degree of discipline is erroneous or unlawful." (*Jones* v. *State Bar* (1989) 49 Cal.3d 273, 286 [261 Cal.Rptr. 397, 777 P.2d 170].) Our main concern is always to protect the public and the courts, and to preserve confidence in the legal profession. (*Young* v. *State Bar* (1990) 50 Cal.3d 1204, 1215 [270 Cal.Rptr. 315, 791 P.2d 994].)

Petitioner does not contest either the sufficiency of the evidence or the degree of discipline recommended. Instead, he raises two procedural objections to the proceedings before the State Bar. Neither has merit.

■ He first contends he was deprived of due process when the referee denied his request for a continuance. He argues that the referee made unjustifiable assumptions about his condition after the accident and that he is entitled to a new hearing to allow him to present his defenses and facts in mitigation.

We disagree. "Continuances of disciplinary hearings are disfavored, and a request for continuance must be supported by a factual showing of good cause. [Citation.] . . . A strong rule against unnecessary delay is essential to ensure that the public will be protected by the prompt discipline of erring practitioners." (*Palomo* v. *State Bar* (1984) 36 Cal.3d 785, 791-792 [205 Cal.Rptr. 834, 685 P.2d 1185].)

Here, petitioner claims the car accident resulted in both new injuries and the aggravation of a prior serious knee injury. He requested a 90-day continuance because he was in severe pain. However, the referee noted it was inconceivable that a person would sustain an injury of such severity but fail to seek immediate medical treatment.[9] The referee also noted that although petitioner claimed to be taking prescription medication for his pain, he did not explain who prescribed the drugs or when he obtained the prescription. Finally, the referee noted that the chiropractor's certificate of disability

---

[9] Petitioner saw his chiropractor on the day after the accident and had an appointment with his orthopedic surgeon on the day of the hearing.

lacked any information about petitioner's physical condition; it merely stated that he was in a car accident and was in severe pain. (See State Bar Court Rules of Practice, rule 1131(e)(2) [illness may be considered good cause for a continuance if it is "supported, wherever possible, by an appropriate declaration of a medical doctor, stating the nature of the illness and the anticipated period of any incapacity"].) We agree that petitioner's showing of good cause was deficient.

Moreover, although petitioner has a due process right to be heard at a meaningful time and in a meaningful manner, his failure to be heard in the disciplinary proceedings was due to his own lack of diligence. (See *Jones* v. *State Bar, supra,* 49 Cal.3d 273, 288.) Prior to the default hearing, petitioner failed to participate in the mandatory settlement conference. (See State Bar Court Rules of Practice, rule 1131(d)(9) [in ruling on motion for a continuance, the State Bar Court should consider whether the party requesting the continuance failed to appear at any conference ordered by that court].) More important, petitioner did not avail himself of the procedures to set aside his default within the statutory period or accept the invitation to participate in the review department hearing. He cannot now claim his due process rights were violated.

■ Petitioner also contends the Office had an affirmative duty to disclose exculpatory evidence at the hearing. He argues that the nature of the disciplinary proceedings and the implications of the State Bar Court Rules of Practice mandate this result. The argument is unpersuasive. An accused attorney in disciplinary proceedings has an obligation to obtain representation, to appear at the hearing, and to present evidence. (See *Palomo* v. *State Bar, supra,* 36 Cal.3d 785, 792.) If the attorney fails to appear, the hearing panel may proceed and rule on the accusations in the attorney's absence. (§ 6111.) Here, petitioner chose to represent himself in the disciplinary proceedings and it was his responsibility to appear and present evidence. He cannot shift his evidentiary burden to the State Bar.

## II

■ As we stated above, petitioner does not contest the degree of discipline recommended by the State Bar. Nevertheless, we are obligated to review the record and exercise our independent judgment to determine whether the recommended discipline is appropriate. (*Bernstein* v. *State Bar* (1990) 50 Cal.3d 221, 229 [266 Cal.Rptr. 625, 786 P.2d 352].)

■ We agree with the review department that placing petitioner on probation for five years subject to conditions including actual suspension for two years is adequate and appropriate discipline. However, we believe that

the review department's departure from a portion of the recommendation of the referee was in error.

In the Koshay matter, petitioner obtained a slightly damaged Rolex watch from his client purportedly to be used as evidence, but neither made use of the watch nor returned it to his client. The referee recommended as a condition of probation that, within two years from the effective date of our opinion, petitioner return this watch or the sum of $1,000 together with interest thereon at the rate of 10 percent per annum from August 30, 1983. The review department deleted the interest requirement. However, we have often required payment of interest when an attorney fails to return unearned fees. (See, e.g., *Bernstein v. State Bar, supra,* 50 Cal.3d at p. 225; *Slavkin v. State Bar* (1989) 49 Cal.3d 894, 906 [264 Cal.Rptr. 131, 782 P.2d 270].) We see no reason to depart from the general rule because petitioner retained personal property rather than fees.

Accordingly, it is ordered that Barry B. Martin be suspended from the practice of law for five years. Execution of the order is stayed and petitioner is placed on probation for five years on the condition that he be actually suspended for two years, that he comply with the terms of probation adopted by the review department, and that he pay interest on the $1,000 conditionally owed to Mr. Koshay. In addition, petitioner must: (i) comply with rule 955, California Rules of Court, and perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the effective date of this order; (ii) take and pass the Professional Responsibility Examination before the expiration of his period of actual suspension; and (iii) show proof satisfactory to the State Bar Court of his rehabilitation, fitness to practice, and learning and ability in the general law prior to returning to practice.

This order is effective upon the finality of this decision in this court. (See Cal. Rules of Court, rule 953(a).)

LUCAS, C. J., Dissenting.—Under the Standards for Attorney Sanctions for Professional Misconduct (standards), abandonment of a client's case subjects an attorney to either suspension or disbarment. (Rules Proc. of State Bar, div. V, stds. 2.6(a) & (b), 2.3.) As the majority observes, petitioner abandoned four matters over four years, substantially harming at least two of the clients (Espinosa and Koshay); he intentionally misled a successor attorney retained by Espinosa; he failed to return Koshay's watch and told him his case was proceeding when in fact he had failed to file a complaint; and he failed to respond to his clients' numerous telephone calls and correspondence.

After the proceedings against him began, petitioner remained as uncooperative with the State Bar as he was with his clients. By declining to appear in the disciplinary proceedings, petitioner has created a record that provides neither explanation for his serious misconduct nor mitigating evidence suggesting his misconduct will not recur.

He may, as unfortunately has been true in many disciplinary proceedings in recent years, suffer from the effects of substance abuse or addiction. He may have a disabling psychological condition that affects his ability to practice law. If these conditions are present, however, no provision is made in the probationary order for treatment and supervision specific to the problem. As a result of his default and failure to acknowledge the cause of his misconduct, petitioner is relieved of the imposition of probation conditions directed specifically to preventing similar misconduct in the future. He thus obtains a benefit denied attorneys who cooperate with the State Bar and acknowledge both their misconduct and the reasons therefor.

The principal concern of the court in disciplinary proceedings is protection of the public and preservation of confidence in the legal profession. (*Baker* v. *State Bar* (1989) 49 Cal.3d 804, 822 [263 Cal.Rptr. 798, 781 P.2d 1344].) As a general rule, when an attorney has engaged in serious misconduct, and there is no evidence to explain the misconduct and afford a basis for believing that sanctions less than disbarment would be adequate to prevent recurrence, that protective purpose can be best served by disbarment. (See *Bowles* v. *State Bar* (1989) 48 Cal.3d 100, 110-111 [255 Cal.Rptr. 846, 768 P.2d 65]; *Cooper* v. *State Bar* (1987) 43 Cal.3d 1016, 1029-1030 [239 Cal.Rptr. 709, 741 P.2d 206].)

Requiring a determination by the State Bar that petitioner is rehabilitated and fit to practice law at the end of the probationary suspension is an inadequate substitute for disbarment and reinstatement proceedings if the public is to be protected. The cause of petitioner's misconduct will be no more, and may be less, apparent at the time he seeks to resume practice. That procedure may be appropriate if an attorney suffers from a transitory disabling condition to which his misconduct is attributable. Its efficacy is doubtful, however, when the cause of the misconduct is unknown.

I would disbar petitioner.

**ARABIAN, J.,** Dissenting.—I join the dissenting opinion of the Chief Justice. I write separately to express my dismay over petitioner's lack of understanding of proper professional conduct. At oral argument, representing himself, petitioner was asked about the Rolex watch he had obtained from his former client. Petitioner responded that no writing exists to support his

theory that it was accepted in lieu of other fees and he denied that it was given to him as evidence. In addition, although he purports to dispute the claim proffered by the State Bar and the client that he was asked for its return, this factual matter was resolved adversely to him and he does not here contest the sufficiency of the State Bar Court's findings. In my view, not only has petitioner converted this item of personalty for lo these many years, but he had the audacity, when asked of its whereabouts, to reach into his pocket and display it to the court.

A Rolex watch is famous for its ability to perform at great heights and extreme depths. True to its reputation, it evidences here both the height of petitioner's chicane and the depth of his deception. Petitioner would have benefited more from the use of a moral compass than from the wrongful retention of his client's timepiece. I would disbar.